The SOMMERS DRUG STORES COMPANY EMPLOYEE PROFIT SHARING TRUST, Plaintiff–Appellant Cross–Appellee,

v.

Walter N. CORRIGAN and Corrigan Enterprises, Inc., Defendants–Appellees Cross–Appellants.

No. 88–1494.

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1989.

Charles R. Shaddox, Charles B. Gorham, Shaddox, Compere, Gorham & Good, San Antonio, Tex., E. Anne McKinsey, Colleen O. Nelson, Minneapolis, Minn., for plaintiff-appellant cross-appellee.

Shannon H. Ratliff, S. Jack Balagia, Jr., Marc O. Knisely, McGinnis, Lochridge & Kilgore, Austin, Tex., for defendants-appellees cross-appellants.

Before JOLLY, HIGGINBOTHAM and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A class of participants and beneficiaries of Sommers Drug Stores Company Employee Profit Sharing Trust sued Walter N. Corrigan and Corrigan Enterprises, Inc., for breach of their fiduciary duty under ERISA and under state common law. The trial court dismissed the state law claim on grounds that it was preempted by ERISA, and the case proceeded to trial on the ERISA claims. The court entered judgment for the class following a jury verdict in its favor.

In *Sommers Drug Stores v. Corrigan Enterprises*, 793 F.2d 1456 (5th Cir.1986),

*cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987), we vacated the district court's judgment and remanded for new trial, finding that ERISA did not preempt the state law claim and that the court had erroneously instructed the jury regarding fiduciary duty under ERISA. On remand, the trial court once again dismissed the state law claim, finding that Maryland law governed and that Maryland law did not recognize such a claim. After a second trial on the ERISA claim, the district court entered judgment on a jury verdict for defendants.

On appeal, the class argues that the trial court failed to instruct the jury properly on its ERISA claim and erroneously dismissed its state law claim. In response, defendants urge that the class representatives lack standing to sue under ERISA because they have accepted their vested benefits in a lump sum. We are persuaded that the class representatives have colorable claims for vested benefits and therefore qualify as "participants" authorized to bring suit under ERISA. Because we find that the trial court properly instructed the jury on fiduciary liability under ERISA, we affirm the judgment for defendants on that claim. We likewise affirm the dismissal of the pendent state law claim.

## I

Sommers Drug Store Company began negotiations to sell its drug store assets to Malone & Hyde, Inc. As part of this effort to sell, the shareholders approved a reverse stock split recommended by the board. Following the split, Walter N. Corrigan, Sommers' President, held approximately 52% of Sommers' outstanding shares and the Employee Profit Sharing Trust held roughly 20%. Sommers, with shareholder approval, later agreed to sell its drug store assets and trade name to Malone & Hyde. Sommers changed its name to Corrigan Enterprises, and in exchange for the drug store assets and trade name was paid over five million dollars in cash and assumed over two million dollars in debts. Malone & Hyde also agreed to hire Corrigan for ten years at $100,000 per year.

Following the sale, Walter Corrigan and Corrigan Enterprises offered to buy stock owned by other shareholders at $40 per pre-split share. Several shareholders accepted. The trustees also considered whether to sell the shares owned by the Trust and liquidate the Trust, distributing the proceeds to the participants. Corrigan indicated in a letter that Corrigan Enterprises desired that the assets of the Trust be reduced to cash and distributed to the participants. The trustees and participants debated the merits of this plan, but ultimately the trustees decided to accept the offer, and the participants unanimously approved this decision at a meeting on December 16, 1977. The sale was accomplished in March 1978 and the Trust was liquidated and distributed. In October 1980, the class sued Corrigan and Corrigan Enterprises alleging, among other things, breach of fiduciary duty under ERISA and state common law.

## II

The class brought this ERISA action pursuant to 29 U.S.C. § 1132(a)(2). That provision authorizes either the Secretary of Labor or a "participant," "beneficiary" or "fiduciary" to bring a civil action for breach of fiduciary duty as proscribed by § 1109(a). Section 1132(e)(1) confers exclusive jurisdiction on federal courts to hear such actions. 29 U.S.C. § 1132(e). Defendants deny that the class representatives are among the groups the statute authorizes to sue and that there is federal subject matter jurisdiction.

The debate centers on whether the class representatives qualify as plan "participants" within the meaning of ERISA. Section 1002(7) defines "participant" as:

[A]ny employee or former employee of an employer ... *who is or may become eligible to receive a benefit* of any type from an employee benefit plan....

29 U.S.C. § 1002(7) (emphasis added).

Defendants contend that the class representatives are not "participants" because they have accepted their vested benefits in a lump-sum and, thus, are no longer eligi-

ble or likely to become "eligible to receive a benefit" under the plan.

◼ The class contends that defendants waived their right to contest standing by not raising the issue during the original appeal. We have recognized, however, that standing is essential to the exercise of jurisdiction, and that lack of standing can be raised at any time by a party or by the court. *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). "Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal." *Safir v. Dole*, 718 F.2d 475, 481 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984). We find no waiver.

Defendants rely on *Yancy v. American Petrofina, Inc.*, 768 F.2d 707, 709 (5th Cir. 1985), for the proposition that a "participant" who accepts his benefits in a lump sum no longer has standing to sue under ERISA. We think defendants read *Yancy* too broadly.

Yancy, a pension plan participant, took early retirement from American Petrofina, electing to receive his benefits in one lump-sum payment in order to avoid an announced decrease in the interest rate factor used to compute such payments. Over a year later he sued American Petrofina, alleging that the change in the plan's method of computing interest caused him to retire early, violated the Plan, and breached the fiduciary duty imposed by ERISA. The district court granted summary judgment in favor of American Petrofina on grounds that Yancy lacked standing. We affirmed the trial court's finding that Yancy lacked standing, stating that:

> A participant or beneficiary is defined as an employee or former employee who is or may be eligible to receive a benefit under the plan. 29 U.S.C. § 1002(7). "This excludes retirees who have accepted the payment of everything owed to them in a lump sum, because these erstwhile participants have already received

the full extent of their benefits and are no longer eligible to receive future payments." *Joseph v. New Orleans Electrical Pension & Retirement Plan*, 754 F.2d 628, 630 (5th Cir.1985). * * * Yancy accepted his lump sum when he retired prior to the effective date of the amendment. He admits that the lump sum was the full amount due to him under the terms of the plan as in effect when he retired. ERISA does not provide standing for him to come into court over a year later and complain that a change in the plan effective after his retirement forced him to retire early thereby depriving him of several years of income and so decreasing his final retirement benefit.

768 F.2d at 708.

The class contends that *Yancy* and the cases cited therein are distinguishable because plaintiffs in those cases sought relief based on breaches that occurred *after* they received their lump sum. Yancy challenged a plan amendment that did not become effective until *after* he received his benefits. Similarly, plaintiffs in *Joseph* sought benefits made available for the first time after they had received everything owed them in a lump sum. *Joseph*, 754 F.2d 628. The class asserts that its representatives, on the other hand, seek benefits that were allegedly owed them at the time they sold their shares. We agree with the class that *Yancy* is distinguishable, although we are not persuaded that the sequence of payment and breach is necessarily determinative. Rather, the point is that to accept the class's position that its representatives are "participants," we must find that they "[are] or may become eligible to receive a benefit" under the plan. The Supreme Court has recently stated that a former employee does not fall within the "may become eligible" language of Section 1002(7) unless he has a reasonable expectation of returning to covered employment or a colorable claim to vested benefits. *Firestone Tire and Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). Since the class representatives have no expectation of returning to covered

employment, we must determine whether their present claim is one for "vested benefits" under the plan.

In *Yancy,* we had no difficulty concluding that plaintiff's claim was for damages rather than for vested benefits. We explained that:

> Yancy's claim is not for an ascertainable amount, but for a sum that possibly could have been earned if he had continued working. The term "participant" encompasses only those former employees who are owed vested benefits. *Nugent v. Jesuit High School of New Orleans,* 625 F.2d 1285, 1288 (5th Cir.1980). Yancy has already received all benefits vested in him prior to his retirement.

768 F.2d at 709.

As we will see, whether a claim is for vested benefits is not always apparent. The Ninth Circuit struggled with this issue in *Kuntz v. Reese,* 760 F.2d 926 (9th Cir. 1985). The Kuntz plaintiffs were former employees whose vested benefits had been distributed in a lump sum. They later sued for breach of fiduciary duty under ERISA, contending that defendants had lied about the amount of benefits they would receive under the plan and had failed to comply with ERISA requirements for disclosing plan documents. 760 F.2d at 929. On appeal, the Ninth Circuit initially found that plaintiffs were "participants" with standing to sue under ERISA because their damage claim could be viewed as a "benefit of any type" under the plan. The court reasoned that Congress could not have intended "the term 'participant' to be interpreted so narrowly that former employees are denied standing under ERISA to challenge the correctness of the amount of vested benefits that have been distributed to them." 760 F.2d at 933.

On rehearing, however, the Ninth Circuit reversed itself and concluded that the Kuntz plaintiffs lacked standing to sue under ERISA. *Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986) (per curiam), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). The court explained:

> We are now persuaded that the *Kuntz* plaintiffs are not participants because, as former employees whose vested benefits under the plan have already been distributed in a lump sum, the *Kuntz* plaintiffs were not "eligible to receive a benefit," and were not likely to become eligible to receive a benefit, at the time that they filed the suit. Because, if successful, the plaintiffs' claim would result in a damage award, not in an increase of vested benefits, they are not plan participants. The Kuntz plaintiffs do not allege that their vested benefits were improperly computed, rather they allege breach of fiduciary duty or of a duty to disclose information about benefits, thus any recoverable damages would not be benefits from the plan.

785 F.2d at 1411.

While *Kuntz v. Reese* could be read to deny standing to all those who have accepted lump sum benefits, the Ninth Circuit has not done so. The breach of fiduciary duty claims of those who had accepted lump sum benefits were distinguished from those of the *Kuntz* plaintiffs in *Amalgamated Clothing & Textile Workers v. Murdock,* 861 F.2d 1406 (9th Cir.1988). Although the plaintiffs had "received their actuarily vested plan benefits," the court found that a constructive trust in their favor "may be construed as a 'benefit of any type from an employee benefit plan.'" *Id.,* at 1417–18.

> It would be ironic if the very acts of benefit payment and plan termination that allegedly resulted in a fiduciary personally obtaining ill-gotten profits should also serve to deny plan beneficiaries standing to seek a constructive trust on those profits to redress the fiduciaries' alleged breach of the duty of loyalty.

*Id.,* at 1418.

The distinction between "benefits" and "damages" is not clear. This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories. The statute simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but

were not. Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

■ The class's claim falls between these poles. However, we are persuaded that it is quite close to a simple claim that benefits were miscalculated. In *Yancy* it is conceded that the lump sum received was the full amount due under the terms of the plan in effect when the plaintiff retired. In *Kuntz* the plaintiffs also had received the full amount of their vested benefits under the plan (even if not as it had been represented to them). Here the class representatives claim that the amount received was not the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less than fair market value. If the class prevailed on its claims, the representatives would be "eligible to receive a benefit"—the remainder of what was owed them and should have been paid to them at the time they received their lump sum settlement. It must be remembered that the stock was sold as a step in a planned liquidation of the trust with distribution to the class. It is plain that here the class members seek their share of the difference between the price the representatives received for their shares and the fair market value of those shares at the time they were sold. In other words, the representatives have a claim for an ascertainable amount allegedly owed them at the time they received their lump sum. We do not believe that Congress intended to deny such plaintiffs standing to sue under ERISA. We therefore conclude that the class's present claim is for "vested benefits" and that its representatives qualify as "participants" authorized to bring suit under ERISA.

## III

The class argues that the trial court's jury instructions on fiduciary liability under ERISA were too restrictive and failed to present all theories of liability for which evidence was presented.

■ A trial court is accorded substantial latitude in fashioning jury instructions and if, considering the totality of a charge, the instructions are "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate." *Bode v. Pan American World Airways, Inc.*, 786 F.2d 669, 671–72 (5th Cir.1986), *quoting Scheib v. Williams–McWilliams Co., Inc.*, 628 F.2d 509, 511 (5th Cir.1980). If the charge tends to confuse or mislead the jury, however, it will constitute grounds for reversal. *Bode*, 786 F.2d at 672.

On the first appeal we reversed judgment for the class because the trial court's instructions failed to explain adequately the nature of control required before defendants could be considered fiduciaries. 793 F.2d at 1460. We gave the district court specific instructions to follow on remand. *Id.* At the second trial, the district court instructed the jury in accordance with our prior directive:

> You are instructed that in determining whether Walter Corrigan or Corrigan Enterprises were fiduciaries you must determine whether the Defendants actually possessed discretionary authority or control over the sale of the trust's stock. You may not infer that Walter Corrigan or Corrigan Enterprises, Inc. exercised discretionary authority or control over the trustees' decision merely from the fact that the trustees were formerly employed by Sommers Drug Stores Company (now known as Corrigan Enterprises, Inc.) or merely from the fact that Walter N. Corrigan was an officer, director, and principal shareholder of Corrigan Enterprises, Inc. or merely from the fact that the Defendants had power to appoint the trustees.
>
> You may find that the Defendants had discretionary authority or control over the sale of the trust's stock only if the

Defendants, either through the use of their positions or otherwise, caused the trustees to relinquish their independent discretion in deciding whether to sell the trust's stock and to follow instead the course prescribed by the defendants.

The court then submitted the following special interrogatory on fiduciary status:

Do you find that Walter Corrigan was a fiduciary for the purposes of ERISA, that is, he exercised discretionary authority or control over the trustees' decision to sell the trust stock for $40 per share?

An identical special interrogatory inquired about the fiduciary status of Corrigan Enterprises, Inc. The jury answered "no" to both interrogatories.

The class argues that while the court's instruction was proper as to whether defendants were fiduciaries *with respect to the sale of the Trust's stock*, it failed to articulate the various ways in which the class alleged the defendants had violated their fiduciary obligations. Specifically, the class contends that the court committed reversible error by failing to give an instruction under ERISA § 405 for co-fiduciary liability and under § 406 for engaging in prohibited transactions, asserting that there was ample evidence at trial to support these claims. The class notes that fiduciary liability may be established under these latter provisions without a finding that defendants exercised control over the trustees' decision to sell the Trust's stock.

Defendants contend that the class failed to preserve its argument on appeal by failing to either submit additional special interrogatories or object to the omission of any interrogatory at the trial level. *See* Fed.R. Civ.P. 49(a). The class, however, included in the pretrial order a proposed general verdict with instructions articulating its various theories of fiduciary liability. The court declined to give those instructions, and gave the instruction and special interrogatories discussed above. The class specifically objected both to the court's failure to instruct the jury regarding the broad definition of fiduciary duty under § 3(21)(A) and its failure to give instructions under § 405 for co-fiduciary liability and under § 406 for engaging in prohibited transactions, thus preserving its argument for appeal. We now address those arguments.

## A.  CO–FIDUCIARY LIABILITY

The class argues that the trial court committed reversible error by failing to instruct the jury on co-fiduciary liability under ERISA § 405(a), 29 U.S.C. § 1105(a).[1] We disagree.

The class submitted the following instruction on co-fiduciary liability under ERISA.

ERISA imposes liability on a fiduciary for the violation of a fiduciary duty by another fiduciary:

(1) If he, [sic] knowingly participates in or knowingly conceals the violation of the other fiduciary;

(2) If by reason of his failure to discharge his duties solely in the interest of the participants and beneficiaries, he enables the other fiduciary to commit a violation; or

(3) If he has knowledge of a violation by another fiduciary and fails to make reasonable efforts to remedy the violation.

This liability is known as co-fiduciary liability, and it is imposed on fiduciaries even if they do not have discretionary authority or discretionary control over the plan functions performed by the other fiduciary.

---

1.  ERISA § 405(a), 29 U.S.C. § 1105(a), states: [A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act of omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Plaintiff contends that the trustees of the Employee Trust violated their fiduciary duties in selling the stock for $400,000. Plaintiff also claims that the Defendants violated their co-fiduciary duties by permitting the trustees to sell the stock. Plaintiff has the burden of proving that Walter Corrigan and Corrigan Enterprises violated their co-fiduciary duties resulting in loss to the Employee Trust.

■ The jury determined that defendants were not fiduciaries by answers to special interrogatories on fiduciary status. Therefore defendants could not be liable as co-fiduciaries. The class contends that exercising authority and control over the trustees' decision to sell the trust stock is not the only way that defendants could achieve fiduciary status. Nonetheless, as we held in our prior decision in this case, exercising such control is the only way that they could be considered fiduciaries with any responsibility for the plan's disposition of the trust stock. 793 F.2d 1456.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (1982), states:

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. (Emphasis added.)

"The phrase 'to the extent' indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." 793 F.2d at 1459–60, citing *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir.1982). *See also American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, 841 F.2d 658, 662 (5th Cir.1988). Absent such authority or control the defendants could not be fiduciaries, and any "participat[ion] ... in an act or omission of [an]other fiduciary" or "knowledge of a breach by [an]other fiduciary" would be irrelevant. To have allowed a fiduciary

duty to arise from something other than such control "would vitiate the notion of limited fiduciary responsibility established by the 'to the extent' language of ERISA § 3(21)(A)." 793 F.2d at 1460. The district court was directed to instruct the jury that it could determine that defendants were fiduciaries only if they "actually possessed discretionary authority or control over the sale of the trust's stock," and it instructed the jury according to our directive.

### B. PROHIBITED TRANSACTIONS

■ Section 406(a) prohibits a fiduciary from causing a plan to engage in particular transactions with and for the benefit of a party in interest. Section 406(b) generally prohibits a fiduciary from dealing with plan assets in his own interest or acting on behalf of any party whose interests are adverse to the plan participants in any transaction involving the plan.

There was no prejudicial error in failing to instruct the jury on section 406(a). Since defendants were found not to be fiduciaries, the lack of explanation to the jury about this type of breach of fiduciary duty was not relevant because the jury "never got to the point where such an explanation would have been useful." *Davis v. Food Mart, Inc.*, 334 F.2d 27, 29 (5th Cir.1964). *See also Turlington v. Phillips Petroleum Co.*, 795 F.2d 434, 444 (5th Cir.1986) (although jury instruction was deemed correct, "even if it had not been, the jury never reached the [questions complained of]"). The defendants were not found to be fiduciaries and had no fiduciary duty not to engage in the transactions.

The jury's finding that the defendants were not fiduciaries is not the only reason why jury instructions regarding a breach of section 406(b) through defendants "causing" the plan to enter into a prohibited transaction would be irrelevant. The jury's finding that the defendants did not exercise discretionary authority or control over the trustees' decision to sell the trust stock is also a finding that they did not "cause" the plan to enter into such a transaction. "[A]ppellants' status as fiduciaries with respect to the Trust's stock depend[ed] on

whether they controlled the trustees' decision to sell." *Sommers*, 793 F.2d at 1460.

Adding an instruction on section 406(b) would have been only another way of asking whether the defendants exercised discretionary authority or control over the trustees' decision to sell the trust stock, and would have been unnecessarily confusing. The district court properly followed our prior instructions, and we find no error in his charge to the jury.

## IV

Finally, the class argues that the trial court erred by dismissing its pendent state law claim. In its complaint, the class alleged that defendants had a fiduciary duty to the Trust as minority shareholder, which it breached by purchasing the Trust's shares for less than their fair market value. The class contends that the district court erred by finding that Maryland law governed and that Maryland law did not recognize such a cause of action.

A federal court exercising pendent jurisdiction over state law claims, must apply the substantive law of the state in which it sits. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (*citing Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). This includes the forum state's choice of law rules. *See, e.g., In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4th Cir.1988); *Bi–Rite Enterprises, Inc. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 442 (1st Cir.1985); *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir.1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1136 (3d Cir.1977). We must therefore determine what law Texas courts would apply to this claim.

Texas has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 6 (1971)[2] for resolving choice of law issues. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). "However, a court should only resort to the § 6 guidelines in the absence of either a valid contractual agreement between the parties regarding the applicable law, or a local statutory provision controlling the disposition of the choice of law question." *American Home Assurance Co. v. Safeway Steel Products Co., Inc.*, 743 S.W.2d 693, 697 (Tex.App.—Austin 1987, writ denied). Comment (a) of § 6 provides that "A court, subject to constitutional limitation, must follow the directions of its legislature."

The class argues that Texas has the "most significant relationship" to its claim and that Texas law should govern. Texas, however, has a statute which specifically controls the choice of law issue. Tex. Bus. Corp. Act Ann. art. 8.02 (Vernon Supp. 1989) provides that:

> [T]he internal affairs of a foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares, shall be governed solely by the laws of its jurisdiction of incorporation.

*See also* Tex. Bus. Corp. Act Ann. art. 8.01.A (Vernon Supp.1989) ("nothing in this Act contained shall be construed to authorize this State to regulate the organization of [a foreign] corporation or its internal affairs"). The Texas legislature has therefore made clear that the law of the incorporating state, in this case Maryland law, governs the class's claim.

---

**2.** § 6. Choice–of–Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The class, relying on *Mansfield Hardwood Lumber Co. v. Johnson,* 268 F.2d 317, 321 (5th Cir.1959), *cert. denied,* 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959), argues that the Texas statute should not apply. In *Mansfield,* we stated that the common law rule that a corporation's internal affairs are governed by the law of the incorporating state should not apply "where the only contact point with the incorporating state is the naked fact of incorporation, and where all other contact points ... are found in another jurisdiction." *Mansfield,* however, is inapposite. That case involved Louisiana law, which had no specific statutory directive controlling the choice of law issue. In this case, the Texas legislature has made clear that the law of the incorporating state governs a corporation's internal affairs. The district court therefore properly concluded that Maryland law governed the class's state law claim.

■ Under Maryland law, a controlling shareholder or director does not stand in a fiduciary relationship to individual minority shareholders with respect to their stock. *Goodman v. Poland,* 395 F.Supp. 660, 678–80 (D.Md.1975). In *Goodman,* the court summarized Maryland law as follows:

Generally an officer or director is not in a fiduciary relationship with an individual stockholder with respect to his stock, and, in the absence of actual fraud, the legality of the transaction is not affected by the failure of the purchaser to divulge information which he may have concerning the value of the shares of stock.

395 F.Supp. at 680 (*quoting* 6 M.L.E., Corporations § 207, at 293 (1960). *See also Llewellyn v. Queen City Dairy, Inc.,* 187 Md. 49, 48 A.2d 322, 327 (1946) (failure of officer or director to disclose any inside information when purchasing stock from shareholder will not militate against him so long as he does not actively mislead the seller or perpetrate a fraud).

The class argues that these principles are inapplicable because "the fiduciary obligation alleged ... in the complaint is broader than simply that owed by majority to minority shareholders" and that "the Trust representatives, in their capacities as *beneficiaries,* have a cause of action against the defendants." The class's state law claim, however, was pled exclusively on the basis that a director, officer and majority shareholder owes a fiduciary duty to minority shareholders. Moreover, the class has not directed us to any Maryland authority recognizing this supposedly "broader" claim.

The class next contends that its claim falls within the "fraud" exception recognized by the Maryland courts. The class strains to argue that fraud was "implicated" by its claims, but ultimately concedes that fraud was never particularized. Fed. R.Civ.P. 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." *See also* 5 C. Wright & A. Miller, Federal Practice and Procedure §§ 1297, 1298 (1969). The class's contention that its claim falls within the "fraud" exception is simply not before the court.

We must therefore affirm the trial court's dismissal of the class's pendent state law claim.

## V

In sum, we find that the class representatives have standing to sue under ERISA because a colorable claim for vested benefits qualifies them as "participants" authorized to bring suit under ERISA. Addressing the case on the merits, we hold that the trial court properly instructed the jury on fiduciary liability under ERISA, and properly dismissed the class's pendent state law claim. Accordingly, we

AFFIRM.