**Larry REGISTER and Esther Houlihan, Plaintiffs,**

v.

**CAMERON & BARKLEY COMPANY,** Cambar Software, Inc., GreatBanc Trust Company, Hagemeyer North America, Inc., Mary Lou Fox, David L. Lea, Steven L. Raber, Thomas A. Skelton, Tom Stallings, James Warren, M. Joel Bateman, J. Randall Bishop, Cecil Duffie, Cheryl A. Blocker, Paula P. Greer, Debra J. Guest, David G. Gundling, Saundra Gussman, Deborah B. Holden, Allison Mahoney, Amy Mahoney, Andros Neocleous, Christopher C. Nowell, Kim Palmer, Raymond J. Perlock, Jeffrey S. Rosenberg, Kenneth B. Sands, William T. Tamsberg, Hagemeyer P.P.S. N.A. Profit Sharing 401(K) Plan, Cambar Software, Inc. Employee Stock Ownership Plan, Defendants.

C.A. No. 2:03–cv–2672–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 29, 2007.

son and Helms, Charleston, SC, Stephen P. Groves, Thomas S. Tisdale, Jr, Nexsen Pruet Jacobs Pollard and Robinson, Bruce E. Miller, Moore and Van Allen, Charleston, SC, Curtis Warren Stodghill, Stodghill Law Firm, Greenville, SC, Steven Thomas Catlett, Paul Hastings Janofsky and Walker, Carrie E. Kienstra, Gardner Carton and Douglas, Mark E. Furlane, Drinker Biddle and Reath, Steven Thomas Catlett, Jones Day, Chicago, IL, Gregory C. Braden, Leslie M. Bassett, Michael G. Monnolly, Sean K. McMahan, Alston and Bird, Atlanta, GA, David R. Levin, Drinker Biddle and Reath, Washington, DC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is currently before the court on Defendant GreatBanc Trust Company's ("GreatBanc") Motion for Summary Judgment of Plaintiffs' Second Amended Complaint. GreatBanc's chief argument for summary judgment is that neither Larry Register nor Esther Houlihan have standing to bring a breach of fiduciary claim against it because neither former employee is a "participant" in the plan at issue.

Defendants Hagemeyer North America, Inc. ("Hagemeyer"), Cameron & Barkley Company ("C & B"), M. Joel Bateman, J. Randall Bishop, Paula P. Greer, Kenneth B. Sands, William T. Tamsberg, James Warren, Paula P. Greer, Debra J. Guest, David G. Gundling, Sandra Gussman, Deborah B. Holden, Andros Neocleous, Christopher C. Nowell, Kim Palmer, Raymond Perlock, and Jeffrey S. Rosenberg (collectively, the "C & B Defendants")[1] have also

John E. Schmidt, III. Kerry B. Mctigue, Melissa J. Copeland, Michael S. Cashman, Nelson Mullins Riley and Scarborough, Columbia, SC, for Plaintiffs.

Kenneth Michael Barfield, Morris Dawes Cooke, Jr, Barnwell Whaley Patter-

---

1. At all times relevant to this action, M. Joel Bateman, J. Randall Bishop, Paula Greer, Kenneth B. Sands, William T. Tamsberg, and James Warren were members of the C & B ESOP Advisory Committee. Paula Greer, Debra J. Guest, David G. Gundling, Sandra Gussman, Deborah B. Holden, Andros Neocleous. Christopher C. Nowell, Kim Palmer, Raymond Perlock, and Jeffrey Rosenberg were members of the Administrative Committee of the Hagemeyer Plan or its predecessor, the Cambar 401(k) Plan.

filed a Motion for Summary Judgment, adopting the reasoning set forth in Defendant GreatBanc's Memorandum, as have Defendants Cambar Software, Inc. ("CSI"), Mary Lou Fox, David L. Lea, Steven L. Raber, Thomas A. Skelton, Cecil Duffie, Cheryl Blocker, Allison Mahoney, Amy Mahoney, and Thomas Stallings (collectively, the "CSI Defendants").[2]

In these Motions, Defendants[3] raise various arguments in favor of summary judgment; however, because the standing challenge first raised by Defendant Great-Banc calls into question this court's subject matter jurisdiction, it is appropriate to address this issue at the outset. And because the court, after careful consideration, finds that Plaintiffs lack standing to pursue this action, Defendants' Motions for Summary Judgment are granted.

### BACKGROUND[4]

The facts of this case, as supported by the evidence and viewed in the light most favorable to Plaintiffs, are as follows:

C & B was a distributor of maintenance, repair and operating products to the electrical construction industry. It formed C & B Employee Stock Ownership Plan ("C & B ESOP") in 1975. C & B ESOP was an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A), and was administered in South Carolina.

C & B created Cambar Software, Inc. ("CSI") in 1981. CSI employees were eligible to and did participate in the C & B ESOP. As a result, certain participants in the C & B ESOP were allocated shares of both C & B and CSI stock, as well as a share of the C & B ESOP's other assets. Other participants were allocated shares of either C & B or CSI stock, but not both, as well as a share of the C & B ESOP's other assets.

In or around September of 2000, C & B entered into an agreement whereby Hagemeyer would acquire complete ownership of C & B, but not CSI ("Merger Agreement"). Because Hagemeyer was not interested in purchasing CSI, the Merger Agreement separated the C & B ESOP into two plans, the C & B ESOP and a new CSI ESOP. Participants were classified as either "C & B Participants" or "CSI Participants," depending on where they were currently or last employed. CSI Participants, and their accompanying assets and liabilities, were to be spun off to the new CSI ESOP. C & B Participants were to remain in the C & B ESOP, which was to be incorporated into a profit sharing 401(k) plan sponsored by Hagemeyer.

Upon consummation of the merger, each share of C & B's common stock was converted into $736.45 per share in cash and the contingent right to receive a pro rata share of the amount to be distributed from an indemnity escrow fund. At this point, the still intact C & B ESOP contained only CSI common stock and other assets, including cash from the conversion of the C & B stock. C & B Participants were given the option of rolling over their share of the distribution either into a 401(k) plan or into an individual retirement account

---

2. At all times relevant to this action, Mary Lou Fox, Thomas A. Skelton, and Steven L. Raber were member of the CSI Board of Directors. David L. Lea was the President and/or acting Chief Executive Officer of C & B. Cecil Duffie is the current Chief Executive Officer of CSI. Cheryl Blocker, Allison Mahoney, Amy Mahoney, and Thomas Stallings were members of the CSI ESOP Advisory Committee.

3. For purposes of this order, the court refers to GreatBanc, the CSI Defendants, and the C & B Defendants collectively as "Defendants."

4. In describing the facts of this case, the court limits its discussion to those facts relevant to deciding the issue of standing.

("IRA"). CSI Participants' distributions were placed into an account for other CSI assets under the C & B ESOP.

Using the cash from the sale of C & B stock, CSI then bought back common shares in itself from the C & B Participants. For purposes of this exchange of CSI stock for cash, the CSI stock was severely overvalued. This overvalued stock plummeted in value after the spin-off. As a result, CSI Participants' retirement funds are worth less than what they were worth prior to the merger and spin-off.

While the merger was still pending, some participants were awaiting distributions from the C & B ESOP. On December 11, 2000, at the direction of the C & B ESOP's Advisory Committee, GreatBanc made a distribution to Rufus Barkley, an officer or member of the Board of Directors of C & B. For the distribution, C & B ESOP cashed out Barkley's account which had been allocated a total of 2113.11 shares of CSI stock. At the time, the C & B ESOP fiduciaries had valued CSI stock at the inflated price of $28.64 per share.[5] On December 22, 2000, the C & B ESOP Advisory Committee authorized the payment of benefits to other participants awaiting distributions. These participants also received distributions for their allocations of CSI stock at the inflated price of $28.64 per share. As a result of these distributions, certain current and past executives and employees of C & B received a profits wind-fall, while CSI Participants were left with CSI stock worth far less than it had originally been worth.

Plaintiffs Larry Register and Esther Houlihan are former employees of Defendants C & B and CSI. As employees, Plaintiffs participated in these companies' ESOPs. During the spin-off, both Plaintiffs were classified as CSI Participants. Both individual Plaintiffs voluntarily terminated their employment with C & B and CSI. Plaintiff Register requested distribution of his CSI ESOP account, and his account balance was rolled over into the IRA he designated on April 15, 2002. He subsequently received a check for the balance of his CSI ESOP account on September 27, 2004. Plaintiff Houlihan received her benefits on October 1, 2004.

Plaintiffs originally filed this ERISA action against Defendants on August 15, 2003. On August 11, 2006, Plaintiffs filed a Second Amended Complaint, in which they asserted the following ERISA-based causes of action[6] against the fiduciaries of the C & B ESOP and the CSI ESOP:[7]

(I) breach of fiduciary and co-fiduciary duties by authorizing and making exchanges of CSI stock for what the fiduciaries knew or should have known was more than the fair market value in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D) and 29 U.S.C. § 1105 [Count I, Complaint ¶ 56];

(II) breach of fiduciary duty to monitor the plan and duty of loyalty to the plan in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(B) [Count II, Complaint ¶¶ 65–68];

(III) breach of fiduciary duty with respect to offsets of accrued pension

---

**5.** Since its inception in 1988, CSI's stock was consistently valued in the range of $10 to $15.

**6.** The Second Amended Complaint also asserted causes of action for quantum meruit recovery, violation of federal securities laws, and violation of the Racketeer Influenced and Corrupt Organizations Act. The court dismissed these causes of action pursuant to Fed.R.Civ.P. 12(b)(6) by Order dated November 3, 2006.

**7.** In paragraph 52 of the Complaint, Plaintiffs assert that C & B, CSI, and each of the named Defendants are fiduciaries under ERISA.

benefits with artificially inflated CSI stock in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D) [Count III, Complaint ¶¶ 75–78];

(IV) breach of fiduciary and co-fiduciary duties by failing to monitor the conduct of the investing fiduciaries and failing to disclose to the investing fiduciaries material facts concerning CSI's financial condition in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(B) and 29 U.S.C. § 1105 [Count IV, Complaint ¶¶ 82–84]; and

(V) Defendant CSI violated ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4),[8] by failing to promptly respond to Plaintiffs' request for the governing Summary Plan descriptions.

As a result of the Defendant fiduciaries' breaches of their duties, Plaintiffs allege that the value of the stock the CSI Participants received in the merger and spinoff of the plans was wrongfully diminished. As such, they and the other CSI Participants' suffered actual losses to their individual CSI ESOP accounts. [Complaint ¶¶ 61, 74, 77, 86.] Because the fiduciaries' violations of ERISA allegedly resulted in real losses to Plaintiffs and to the other participants of the CSI ESOP, Plaintiffs seek in Counts I, II, III, and IV both (1) equitable relief pursuant to ERISA §§ 502(a)(3), 29 U.S.C. 1132(a)(3), and (2) recovery for loss-

es to the Plan caused by Defendants' breaches of their fiduciary duties pursuant to ERISA § 502(a)(2), 29 U.S.C. 1132(a)(2), and § 409(a), 29 U.S.C. § 1109(a). [Complaint ¶¶ 58, 59, 62, 69, 79, 87.] Further, in Count V of the Complaint, Plaintiffs allege that they were prejudiced by CSI's failure to timely provide plan documents, in violation of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). [Complaint ¶ 91.] Accordingly, Plaintiffs assert that they are entitled to $110 per day commencing thirty days after the first request for information was made to the date of Defendant CSI's response to the request, as provided by ERISA § 502(c); 29 U.S.C. § 1132(c).[9] [Complaint ¶ 92.]

On December 13, 2006, Defendant GreatBanc filed a Motion for Summary Judgment, contending that Plaintiffs are former employees who have received their full distribution from the ERISA-based Plan; accordingly, they no longer have standing as "participants" to pursue a civil action under ERISA § 502, 29 U.S.C. § 1132.

### DISCUSSION

This case involves the question whether Plaintiffs are "participants" in a CSI employee benefit plan, as defined under the Employee Retirement Income Security Act of 1974 (ERISA). The civil actions asserted by Plaintiffs may be

---

**8.** Section 104(b)(4) of ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

**9.** ERISA § 502(c) 29 U.S.C. § 1132(c) provides that "[a]ny administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this Act to furnish to a participant

or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." For purposes of this paragraph, ... each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

brought under ERISA only by a plan "participant," "beneficiary," or "fiduciary." 29 U.S.C. § 1132(a)(2) -(3); 29 U.S.C. § 1132(c).[10] This is both a standing and a subject matter jurisdictional requirement. *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 434 (4th Cir.1986). Plaintiffs, who are former employees and former members of the CSI ESOP, purport to bring this action as "participants." In order to do so, Plaintiffs must meet the statutory definition of participant at the time the action was brought and maintain that status throughout their lawsuit. *LaLonde v. Textron, Inc.,* 418 F.Supp.2d 16, 19 (D.R.I. 2006) (*citing Crawford v. Lamantia,* 34 F.3d 28, 32 (1st Cir.1994) (plaintiff's status at the time the injury occurred is not relevant for standing purposes)).

▪ ERISA defines "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). The Supreme Court has elaborated on this definition by explaining that former employees may be participants if they have (1) a reasonable expectation of returning to covered employment, or (2) a colorable claim to vested benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Thus, if a plaintiff has a legitimate claim for vested benefits, he has standing irrespective of having received his full distribution from the ERISA-based Plan. *Id.; see, e.g., Swinney v. General Motors Corp.,* 46 F.3d 512, 518 (6th Cir.1995) (explaining the "but for" exception and noting that a plaintiff who has divested himself of his plan holdings because of actions by the defendant has standing if he can show that he will prevail in a suit for benefits or that eligibility requirements will be fulfilled in the future); *see also, Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004) (finding that plaintiff who divested herself of her plan holdings still had a colorable claim for vested benefits). In *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* which is cited by both Plaintiffs and Defendants, the Fifth Circuit explained that the line between "vested benefits" and "damages" is not always clear. 883 F.2d 345, 347–50 (5th Cir.1989). The Court attempted to articulate the distinction as follows: an allegation that benefits were wrongly computed clearly states a claim for *vested benefits;* on the other hand, a claim for an unascertainable amount, with no demonstration that recovery would directly effect payments to the plaintiff, states a claim for damages. *Id.* at 349–50.

Here, Plaintiffs assert that, despite the fact that they have received all of their benefits under the plain terms of the ESOP, they still have a "colorable claim to vested benefits."[11] [Response to Great-Banc's Mot. at 6.] Specifically, they assert that they "are not seeking damages based on what their assets might have accrued to in the future had the fiduciaries not acted imprudently[; r]ather, ... they both seek the value of their vested benefits in the C & B ESOP at the time of the fraudulent activity." Accordingly, Plaintiffs ask the court to require Defendants to compensate the ESOP, and therefore, all participants, for the value their shares lost due to Defendants' allegedly imprudent valuation of the CSI stock in the spin-off.

---

**10.** The Secretary of Labor is also authorized to bring a civil action pursuant to 29 U.S.C. § 1132(a)(2).

**11.** Plaintiffs do not contest that they have no reasonable expectation of returning to CSI as employees.

The court finds, however, that even if Plaintiffs can definitively prove the correct valuation of the CSI stock at the time of the spin-off,[12] the court can only speculate as to what the value of the assets *following* the spin-off would have been but for the incorrect valuation. As such, Plaintiffs can not identify a definite ascertainable value lost due to the fiduciaries' breach of duty. Many courts have deemed similar requests for "lost value" to be too speculative to amount to a legitimate claim for "vested benefits." *See, e.g., Crawford v. Lamantia,* 34 F.3d 28, 31 (1st Cir.1994) (plaintiff's request that the court use its "equitable powers" to allocate funds to him and other ESOP members who were "cashed out" after defendants' going-private transaction did not establish the value the ESOP lost in the transaction and was deemed too speculative to amount to a legitimate claim for "vested benefits"); *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.1986) (finding plaintiffs were not plan participants "[b]ecause, if successful, the plaintiffs' claim would result in a *damages* award, not in an increase of *vested benefit* ") (emphasis added); *Yancy v. Am. Petrofina,* 768 F.2d 707, 709 (5th Cir.1985) (the plaintiff's claim for a sum that could not have been earned "cannot be considered as vested under ERISA"); *In re AEP Erisa Litigation,* 437 F.Supp.2d 750, 759 (S.D.Ohio 2006) (having divested himself of his holdings in ERISA plan after he filed ERISA suit asserting breach of fiduciary duty, former employee lacked standing to bring suit under 29 U.S.C. § 1132(a)(2) because his asserted right to sum that possibly could have been earned by prudent investment decisions sought damages that were too speculative to be considered vested under ERISA); *LaLonde v. Textron, Inc.,* 418 F.Supp.2d 16 (D.R.I.2006) (finding that where plaintiffs did not claim that certain benefits were withheld or miscalculated, but rather, that Defendants' improper investment decisions concerning defendants' stock resulted in diminished plan value, their claim was not a claim for vested benefits); *Hargrave v. TXU Corp.,* 392 F.Supp.2d 785 (N.D.Tex.2005) (plaintiffs' allegations that the plan had been undervalued was a claim for "additional damages that *might have* accrued but for the Defendants' alleged misconduct"; these damages are too speculative to be considered "vested" under ERISA); *In re Guidant Corporation ERISA Litig.,* 2006 WL 2828882 (S.D.Ind. Sept. 15, 2006) (where plaintiffs voluntarily withdrew from the Plan after filing suit, and did not claim that their distribution was less due to an error in calculation, plaintiffs had no "colorable claim for benefits"). *But see Sommers,* 883 F.2d at 349 (holding that where plaintiffs asserted that the amount of money received and distributed to plan participants pursuant to the stock sale did not reflect the full value of benefits due under the terms of the plan, plaintiffs had essentially stated a claim for the unpaid value of vested benefits (i.e. the value not reflected in the stock's selling price); thus, the court found the claim "close to a simple claim that benefits were miscalculated," and held that plaintiffs were "participants," having standing under ERISA).

---

12. Defendants assert that Plaintiffs have presented no evidence of the correct valuation of the CSI stock. They claim that Plaintiffs were required to retain their own expert witness to ascertain a value of the CSI shares as of the dates they claim the stock was overvalued, and may not rely on the Report provided by the Secretary of Labor's expert, Randolph Whitt. Plaintiffs demur, asserting that their reliance on the report of expert Randolph Whitt is proper due to the consolidation of the Secretary's case with their own case. For the reasons stated above, the court reaches its ultimate conclusion without ruling upon the admissibility of Mr. Whitt's Report.

The Fourth Circuit Court of Appeals has not yet weighed in on whether a claim for value lost due to a fiduciaries breach of duty is a claim for vested benefits or for damages. In a recent case from this Circuit, however, the Honorable Judge Frederick Motz of the District of Maryland was presented with the issue of whether former participants in an ERISA plan had standing under circumstances similar to those presented here. *In re Mutual Funds Invest. Litig.*, 2006 WL 2381056, *1 (D.Md. Aug. 15, 2006). In that case, plaintiffs were former employees of defendants who had participated in defined contribution plans sponsored by their employees. *Id.* These former employees, who had received distributions from the plans after terminating their employment, claimed that, while they were still invested in the plans, the defendants breached their fiduciary duties under ERISA and caused substantial losses to the plans. *Id.* As a result of these losses, the plaintiffs' distributions were less than they should have been. *Id.* The plaintiffs thereafter brought a cause of action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), seeking to recover from the fiduciaries the "losses to the Plan." *Id.* Judge Motz noted that "numerous courts have found that former participants in an ERISA plan lack standing under circumstances similar to those presented here." *Id.* (citing *Graden v. Conexant Sys., Inc.*, No. 05–0695, 2006 WL 1098233 at *3, 2006 U.S. Dist. LEXIS 16176 at *8 (D.N.J. Mar. 31, 2006); *In re RCN Litig.*, No. 04–5068(SRC), 2006 WL 753149 at *14 (D.N.J. Mar. 21, 2006); *Holtzscher v. Dynegy, Inc.*, No. Civ. A. H–05–3293, 2006 WL 626402 at *5 (S.D.Tex. Mar. 13, 2006); *LaLonde v. Textron*, C.A. No. 02–334S, 2006 WL 519671 at *5 (D.R.I. Mar. 1, 2006); *In re Admin. Comm. Erisa Litig.*, No. C03–3302 PJF, 2005 WL 3454126 at *5 (N.D.Cal. Dec. 16, 2005)). Judge Motz, concurring with the decisions in the above-cited cases, concluded that, "[a]lthough … the question is a close one," the causes of action asserted in this action were "more in the nature of claims for damages than for payment of a vested benefit." *In re Mutual Funds Invest. Litig.*, 2006 WL 2381056, *1. Accordingly, Judge Motz dismissed the plaintiffs' complaint for lack of subject matter jurisdiction. *Id.*

In the case *sub judice*, it is uncontested that Plaintiffs are former employees who received distribution of their vested benefits under the CSI ESOP on September 27, 2004 and October 1, 2004. Plaintiffs do not allege that their distributions were improperly computed; rather, they allege that Defendants' breach of their fiduciary duties caused the Plan's assets at the time of the distributions to have been diminished. The difference between what Plaintiffs' accounts *might have been worth* had the CSI stock been properly valued during the spin-off and what the accounts actually were worth at the time of distribution is not a benefit that is promised under the terms of the ESOP. Under these facts, the court finds that the recovery requested is more in the nature of claims for damages than for payment of a vested benefit. Accordingly, because Plaintiffs have no reasonable expectation of returning to CSI as employees, and have failed to prove that they have a "colorable claim" to "vested benefits" within the meaning of ERISA, Plaintiffs are not "participants" as meant by ERISA and therefore lack standing to pursue their claims pursuant to ERISA § 502; 29 U.S.C. § 1132.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendants' Motions for Summary Judgment are **GRANTED.** It is further **ORDERED** that all other

motions currently pending before the court are **DISMISSED AS MOOT.**

**AND IT IS SO ORDERED.**