Gerard E. LICCIARDI, Plaintiff–Appellant,

v.

KROPP FORGE DIVISION EMPLOYEES' RETIREMENT PLAN and Lone Star Forge Company, Defendants–Appellees.

No. 92–2731.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1993.

Decided April 9, 1993.

Rehearing and Rehearing En Banc Denied May 26, 1993.

Geoffrey G. Gilbert (argued), William J. Cooney, Lynne Mapes–Riordan, McBride, Baker & Coles, Chicago, IL, for plaintiff-appellant.

Leonard S. Shifflett (argued), Wilson & McIlvaine, Chicago, IL, for defendants-appellees.

Before POSNER and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

■ This is a suit for benefits under a pension plan. Although brought under ERISA, the suit raises issues mainly of contractual interpretation; but they are ones potentially of great importance to pension plans and their beneficiaries. The district judge granted summary judgment for the plan. 797 F.Supp. 1375 (N.D.Ill.1992). Although in a case in which contractual meaning must be inferred from a group of written contracts together with extrinsic evidence (for example, testimony as to what the parties intended the documents to mean) the question of meaning is treated as one of fact (perhaps even if the extrinsic evidence is undisputed), rather than as one of law, *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438–39 (7th Cir.1993), and although there are multiple contracts in this case (a severance agreement, a pension plan, and a release of liability), we do not understand either party to want an opportunity to present extrinsic evidence concerning the meaning of the contracts. Implicitly, and we think rightly given the absence of extrinsic evidence, they treat the issue of contractual interpretation as one of law, making our review of the district court's decision plenary. The plaintiff asks us to reverse and direct entry of summary judgment in his favor because he believes that the documents establish his right to the benefits claimed. He does not ask us in the alternative for a trial of his claim. The defendants ask us to affirm but do not argue that the plan vested the plan's trustees with any interpretive discretion that would limit the scope of our review. We are therefore required to interpret the contract(s).

The plaintiff, Licciardi, went to work for Anadite, Inc., a manufacturer of steel forgings and other products, in 1951 as an hourly employee. He worked his way up to be president and chief operating officer of the company, a director and shareholder, and an administrator of the company's pension plan. The plan based pension benefits on the employee's years of service and on his "earnings" in his highest-earning five years with the company. In 1979, a disagreement between Licciardi and other members of the board of directors over the company's future resulted in a mutual decision that he leave Anadite. According to the "omnibus agreement" defining the terms of the divorce, Licciardi "claimed that his past services to the Company have earned him the right to receive substantial compensation above and beyond that previously paid to him." The agreement recites that the company, although disputing the claim, believes that it would be in the company's best interest to resolve it in the manner set forth in the agreement. A paragraph captioned "Cash Payment" states that "Anadite shall pay to Licciardi the sum of $650,000 in settlement of Licciardi's claim with respect to his right to additional compensation for past services rendered." In a later paragraph, captioned "Tax Treatment," "the Company acknowledges that the payments to Licciardi under the consulting agreement and the aforesaid $650,000 payment are compensation for services rendered and to be rendered to the Company, and will be so reported by the Company on its federal and state income tax returns." The reference to tax treatment was inserted at Licciardi's request so that he could report the $650,000 as earned income, which at the time was taxable at a lower marginal rate than unearned income.

Accompanying the "omnibus agreement" was a "mutual general release" in which Licciardi released all claims of any sort that he might have against the company except those arising out of specified agreements, including the "omnibus agreement" but not including the pension plan itself. The district judge thought that by the release Licciardi had surrendered any right to contest the company's treatment of the $650,000 for pension-entitlement purposes.

In 1982, three years after he left Anadite, Licciardi received a statement of the pension benefits to which he would be entitled when he reached retirement age in 1990. The statement indicated that the $650,000 had not been treated as earnings

for purposes of determining the benefits to which he would be entitled. When he complained to the plan administrator, the latter informed Licciardi that the matter could be "corrected at any time." It never was. In 1987, Lone Star Forge Company bought some of Anadite's assets and succeeded to the administration of the pension plan. Lone Star terminated the plan two years later, buying annuities for the beneficiaries in order to cash out their benefits. In computing Licciardi's annuity, Lone Star did not treat the $650,000 as earnings for purposes of determining Licciardi's benefits. When Licciardi realized this (shortly before he began receiving benefits in 1990), he brought this suit.

■ In resting decision on the mutual general release, the district judge relied on *Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114 (7th Cir.1990), a factually similar case. It is true that in *Fair* the pension plan expressly provided that bonuses and other extraordinary items of compensation would not be counted for purposes of determining pension entitlements, *id.* at 1116, while in this case pension rights are keyed to "earnings," defined as the "total amount of wages paid to a participant by the Company, including any overtime pay, commission, bonus payments, and any other additions to or deductions from regular compensation." The defendants concede that if (1) the omnibus agreement had recited that the $650,000 were earnings within the meaning of the pension plan, or (2) the agreement had denominated the sum as a bonus, or (3) the sum had been the judgment or settlement in a suit exclusively for past-due salary or bonus, the $650,000 would indeed have been earnings within the meaning of the pension plan, and the plan administrator would be obligated to treat them as such notwithstanding the release. For, were the release construed so broadly as to deny the enforceability of pension claims specifically provided for in the omnibus agreement, the agreement would be to that extent a nullity. Such a construal would be unreasonable, and would go far beyond *Fair*. This reasoning supports concession (1), at least if the recital is colorable (otherwise the

agreement might be considered to have created a new pension plan), and, less clearly, (2), since "bonus" appears in the pension plan; least clearly (3), since characterization of the judgment or settlement would be required.

But these are details. The basic point is that the release released the defendants from liability based on contestable pension claims. At the same time, although broadly worded and with no exception for claims based on the pension plan, the release did not wipe out Licciardi's claims to any pension benefits to which the plan entitled him. If the release were thought broad enough to wipe out actual pension entitlements, its enforceability would be questionable in light of ERISA's provision forbidding the alienation of pension benefits. 29 U.S.C. § 1056(d)(1). For then it might be a case of Licciardi's having "sold" his pension rights, in the release, in exchange for the $650,000 and any other consideration in the omnibus agreement. If Licciardi's interpretation of the omnibus agreement (which is expressly excepted from the scope of the release) is correct, his pension rights included the right to count the $650,000 that he received under the omnibus agreement as compensation for purposes of determining what those benefits would be; and he argues that, if so, the release could not lawfully extinguish this entitlement.

But the anti-alienation provision was not intended to bar the settlement of disputes over pension rights. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 455 (7th Cir.1991); *Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990). The only significance of the provision in this case is in showing that there was no need for the release to contain an exception for pension rights (as distinct from contestable pension *claims*) and therefore that the absence of such an exception is not an anomaly that might make us question the scope of the release. The release did not affect Licciardi's incontestable pension rights; it did affect, as in *Fair*, contestable claims based on ambiguous terms in the omnibus agreement. That is why concession (3) is uncertain. Moneys

awarded in a judgment in or a settlement of a suit for past-due compensation might not be thought "earnings" within the meaning of the pension plan, just as an award for lost earnings in a personal-injury case is not treated as earnings for purposes of income tax. 26 U.S.C. § 104(a)(2).

■ So *Fair* governs, and bars the suit. But even if, as we greatly doubt, *Fair* is distinguishable on the basis of the different wording of the plans, Licciardi would lose. The best reading of the various agreements taken together is that the $650,000 was not to count in the figuring of Licciardi's pension benefits. The pension plan does not affix pension rights to all moneys received in "compensation" (more on this below), and anyway the only reference to the $650,000 as "compensation" is in the "Tax Treatment" clause of the omnibus agreement, and in that clause the reference points to the tax laws rather than to the pension plan. It is true that the earlier clause ("Cash Payment") describes the payment as being in settlement of Licciardi's claims to additional compensation for past services. But that characterization was necessary to support the parties' effort in the tax clause to persuade the Internal Revenue Service to allow Licciardi to treat the payment as earned income. Though meticulously detailed, the omnibus agreement contains no mention of pension rights, and the mutual release, executed at the same time, does not mention the pension plan. It seems not to have occurred to the parties that the terms of separation of Licciardi from Anadite would have any implications for Licciardi's pension rights, save the obvious one that, once he stopped drawing salary, contributions to his pension account would cease. The "objective" theory of contract has enough grip on judicial thinking to bind contracting parties on occasion to some of the inadvertent consequences of the forms of words that they use, but the key word in the pension plan—"earnings"—does not point unerringly to moneys received in settlement of a dispute.

The amount of pension, moreover, to which Licciardi would be entitled when he reached retirement age depended on his earnings in his five highest-paying years with the company and would be greatly augmented—roughly doubled, in fact—if the $650,000 were treated as earnings in the year in which he received it, his last year with Anadite. And this is the treatment to which Licciardi contends the omnibus agreement, read in light of the pension plan, entitled him. If instead the $650,000 were spread evenly across all the years in which he claimed to have been undercompensated (1972 through 1979), the impact on his five highest-paying years, and hence on his pension entitlement, would be much smaller. So important to the actual computation of his pension is the issue of the correct allocation of the $650,000 payment across years that we doubt that the parties would have left it to the judicial imagination to resolve had they intended the payment to affect pension rights.

Our point is not that the omnibus agreement is too indefinite to enforce. Were it clear that the parties had intended the $650,000 to count as earnings under the pension plan, we might, in default of any indication of how the parties meant to allocate the amount to particular years, assume that they intended to allocate it all to the year in which it was paid, as that would be much the simpler approach. Our point is rather that the parties' failure to deal with the question, when combined with their failure to make any reference in the omnibus agreement or accompanying mutual release to pension rights, is evidence that they did not intend the $650,000 payment to generate pension benefits. There is some more evidence. Although the payment is designated as being in settlement of a claim for past compensation, we know that it was so designated for the sake of tax savings (compare the wording of the agreement with 26 U.S.C. §§ 911(b), 1348(b)(1), as those provisions read in 1979), not descriptive accuracy. Realistically, some part—we do not know what part—was intended to effect an amicable separation. Another part of indeterminate magnitude probably reflected interest, for Licciardi was claiming past-due compensation. The pension plan does not say that all "compensation" is included in determining

pension benefits; it does not mean, for example, that all "compensatory" damages paid an employee by his employer go to augment his pension rights. The operative word in the plan is "earnings," the base definition is "wages," and overtime, commissions, and bonuses are adduced as illustrations of the sorts of additional compensation that count too. It is not obvious that money received in a settlement of a multifaceted dispute, money that may include sums for interest and even for hurt feelings, is "earnings" within the meaning of this provision, even if the dispute is in origin and principal part over earnings. We add that a part of the settlement was explicitly compensation for the company's failure to issue certain shares to Licciardi to which he claimed to be entitled as past-due compensation. Were these shares "earnings"? Who knows? Our point is only that the settlement makes such a poor fit with the pension plan's provision governing the computation of pension rights that we are skeptical whether it was intended to be taken into account in determining those rights.

■ We do not pretend to be certain that this interpretation is correct; it would not strain the language of the pension plan to the breaking point to treat a settlement in lieu of past-due compensation as an "addition to . . . regular compensation." But it is the best interpretation we can come up with on the basis of the limited materials for decision, and we repeat that Licciardi does not ask for an opportunity to present additional evidence of what the parties meant and that *Fair* appears to foreclose his claim irrespective of the terms of the pension plan. We add that Licciardi properly does not argue that a characterization adopted for tax purposes estops the defendants to contest his claim for pension benefits. If there was any fraud on the Internal Revenue Service, Licciardi was an eager participant and should not benefit from it. More important, contract cases should not be complicated by collateral inquiries into the validity of tax-motivated transactions. *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1068 (7th Cir.1992). The line between permissible tax avoidance and forbidden tax evasion is too fine to be made the fulcrum for resolving a private contract dispute.

■ This dispute arose because the severance agreement did not address the pension implications of the severance terms. To head off (or at least simplify) future litigation, employers who have occasion to make extraordinary payments to employees should describe them in language that indicates their classification under the company's pension plan. And judges and arbitrators called on to resolve disputes over compensation should make clear in their judgments what if any part of the judgment is a replacement for wages or other earnings, although for reasons explained earlier such a designation may not be entitled to controlling effect.

On the view that we take of this case we need not consider the company's alternative defense, that Licciardi is barred by laches from enforcing his claim because his delay in asserting it was prejudicial to Lone Star, which succeeded to Anadite's responsibilities under the pension plan without knowing about the claim.

AFFIRMED.