Gerard **BOECKMAN**, Plaintiff,

v.

**A.G. EDWARDS, INC.**, Defendant.

No. CIV. 05–658–GPM.

United States District Court,
S.D. Illinois.

Sept. 26, 2006.

---

Diane M. Heitman, Douglas R. Sprong, Korein Tillery, Swansea, IL, Steven A. Katz, Korein Tillery, LLC, St. Louis, MO, for Plaintiff.

Bernard J. Ysursa, Sr., Cook, Ysursa et al., Belleville, IL, Sari M. Alamuddin, Shannon M. Callahan, Morgan, Lewis et al., Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

MURPHY, Chief Judge.

This matter is before the Court on the motion for judgment on the pleadings brought by Defendant A.G. Edwards, Inc. (Doc. 12). For the following reasons, the motion is **DENIED**.

### BACKGROUND

Plaintiff Gerard Boeckman brings this action on behalf of himself and a proposed class of participants in the A.G. Edwards, Inc., Retirement and Profit Sharing Plan ("the Plan") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). Boeckman, a former employee of Defendant A.G. Edwards, Inc. ("A.G. Edwards"), became a participant in the Plan in 1997. The Plan allows participants to contribute a percentage of their pre-tax earnings to the Plan and permits participants to invest their contributions in one or more of a list of thirty-eight mutual funds available in the Plan.[1]

This case concerns a variety of fees paid by A.G. Edwards to the mutual funds in the Plan, so that some discussion of the structure and operations of mutual funds is necessary in order properly to set out Boeckman's claims and to provide background for the Court's discussion of the issues presented by the instant request for judgment on the pleadings. "A mutual fund is a pool of assets, consisting primarily of portfolio securities, and belonging to the individual investors holding shares in the fund." *Burks v. Lasker*, 441 U.S. 471, 480, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). "Generally, 'mutual funds' are open-end management companies engaged in the business of continuously issuing and offering for sale redeemable securities which represent an undivided interest in the fund's assets." *Investment Co. Inst. v. Camp*, 274 F.Supp. 624, 628 (D.D.C.1967).[2] The appeal of a mutual fund as an investment vehicle is the diversification of risks, professional management, and the opportunity it affords small investors to invest their savings in a professionally-managed portfolio of equity securities. *See* Noboru Tanabe, *Japan's Investment Trust: a Vehicle of Savings for Tomorrow*, 2 Ind. Int'l & Comp. L.Rev. 385, 387 (1992).

Mutual funds are extensively regulated under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1—80a–64 ("ICA"). A fund is required to register under the ICA if it "holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities." 15 U.S.C. § 80a–3(a)(1)(A). *See also* 15 U.S.C. § 80a–8; *SEC v. Midland Basic, Inc.*, 283 F.Supp. 609, 614 (D.S.D.1968). The statute further

---

1. The parties agree that the Plan, which is a so-called 401(k) plan, *see* 26 U.S.C. § 401(k), is a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

2. "Closed-end" management investment companies are those which do not redeem securities continuously, but typically sell a fixed number of shares in traditional underwritten offerings that later trade in secondary markets, through stock exchanges or over the counter. *See* 15 U.S.C. §§ 80a–5(a), 80a–23(c); *McGraw–Hill Cos. v. Vanguard Index Trust*, 139 F.Supp.2d 544, 546 (S.D.N.Y. 2001).

defines an investment company as "any issuer which is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding [40%] of the value of such issuer's total assets[.]" 15 U.S.C. § 80a–3(a)(1)(C). Also, mutual fund shares must be registered under the Securities Act of 1933, 15 U.S.C. §§ 77a—77aa. *See* 15 U.S.C. §§ 77c–77f; 15 U.S.C. § 80a–24. Mutual funds must use a prospectus in connection with the sale of their shares, *see* 15 U.S.C. § 80a–22(d), and are regulated with respect to the amount of their sales load, *see* 15 U.S.C. § 80a–22(b), (c), determination of offering price, *see* 15 U.S.C. § 80a–22(a), the extent to which time-payment plans may be front-loaded, *see* 15 U.S.C. § 80a–27(a), (d), composition of their board of directors, *see* 15 U.S.C. § 80a–10, capital structure, *see* 15 U.S.C. §§ 80a–18, 80a–23, transactions with affiliates, *see* 15 U.S.C. § 80a–17(a), reporting, *see* 15 U.S.C. § 80a–30, proxy solicitations, *see* 15 U.S.C. § 80a–20(a), and in numerous other respects.[3] In 1980, the Securities and Exchange Commission adopted Rule 12b–1, which permits mutual funds to use fund assets to finance distribution and marketing of fund shares to the public. *See* 17 C.F.R. § 270.12b–1.

It is common for mutual funds to offer multiple classes of shares in the same fund or series of funds, with identical investment objectives but varying loads, Rule 12b–1 fees, administrative expenses, transfer agency fees,[4] voting rights, or dividend payments. *See, e.g.,* PaineWebber America Fund, Investment Company Act Release No. 18,084, 56 Fed.Reg. 14,962 (Apr. 12, 1991) (authorizing issuance of three different classes of shares with different loads, distribution fees, and other different characteristics); Freedom Investment Trust, Investment Company Act Release No. 18,377, 56 Fed.Reg. 56,260 (Nov. 1, 1991) (authorizing a multi-class distribution system involving three classes of shares subject to different loads, as well as different distribution fees and other differences); CoreFunds, Inc., Investment Company Act Release No. 18,259, 56 Fed.Reg. 37,743 (Aug. 8, 1991) (authorizing issuance of four or more different classes subject to different service or distribution fees and other differences); Flex–Funds, Investment Company Act Release No. 18,110, 56 Fed.Reg. 19,888 (Apr. 30, 1991) (authorizing issuance of unlimited different classes subject to different expenses for services and other differences). Multiple share classes, with their range of load options and Rule 12b–1 fees, are intended, in theory anyway, to provide an array of choices for investors with differing needs. *See Benzon v. Morgan Stanley Distribs., Inc.,* 420 F.3d 598, 606–07 (6th Cir.2005).

Turning then to the claims asserted in this case, Boeckman alleges that the Plan has assets in excess of $2 billion and that A.G. Edwards could have used the Plan's stature as a large investor to secure more favorable terms regarding fees paid to mu-

---

**3.** In addition to federal regulation, mutual funds are subject to state blue sky laws in the states in which shares are sold, entailing annual filings and fees with state regulators. *See SEC v. Steadman,* 798 F.Supp. 733, 736–37 (D.D.C.1991).

**4.** "A fund ... typically retains a transfer agent, which is responsible for the issuance, transfer and redemption of shares and the opening and maintenance of shareholder accounts .... Transfer agency fees vary substantially with the activity in the fund's shares and the size of customer accounts." Laurin Blumenthal Kleiman & Carla G. Teodoro, *Forming, Organizing and Operating a Mutual Fund,* 1497 PLI/Corp 9, 34 (2005). *See also Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,* 528 F.Supp. 1038, 1043 (S.D.N.Y.1981).

tual funds on behalf of Plan participants. Specifically, Boeckman alleges that A.G. Edwards could have privately retained the same professional money managers used by the mutual funds in the Plan, thereby avoiding a host of fees associated with mutual fund transactions, including shareholder service fees, transfer agent fees, Rule 12b-1 fees, administrative fees, registration and reporting fees, expenses for reports to shareholders, postage and stationery fees, audit and legal fees, custodian fees,[5] and state and local taxes. Also, Boeckman alleges that A.G. Edwards could have purchased less expensive "institutional shares" in the funds, which are typically available only to large or institutional shareholders such as endowments and private retirement plans, instead of the more expensive "retail shares" commonly sold to individual or small investors, which entail higher fees than institutional shares do. Boeckman alleges that the fees paid by the Plan were passed on to Plan participants.

Boeckman's complaint contains four counts. Count I and Count II allege, respectively, that A.G. Edwards breached its fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by failing to negotiate fees for investment services directly with the money managers used by the mutual funds in the Plan, thus minimizing the fees paid by Plan participants, and by purchasing higher-priced retail shares in the funds instead of lower-priced institutional shares. Count III and Count IV allege that A.G. Edwards, as the Plan fiduciary, violated ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D),

by engaging in prohibited transactions with a party in interest. Specifically, Count III of Boeckman's complaint alleges that A.G. Edwards improperly transferred Plan assets to parties in interest—the mutual funds in the Plan—in the amount of the difference between the fees assessed by the funds to the retail shares in the Plan and the fees that would have been assessed had A.G. Edwards privately negotiated a contract with the money managers used by the funds. Count IV alleges that A.G. Edwards improperly transferred Plan assets to parties in interest—the mutual funds—in the amount of the difference between the fees assessed by the funds to the retail shares in the Plan and the fees that would have been assessed had the Plan invested in institutional shares in the funds.

A.G. Edwards in turn has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motion presents two issues for resolution. First, A.G. Edwards contends that a release of claims executed by Boeckman as a condition of receiving a severance package when he left his employment with A.G. Edwards in 2002 bars the instant suit. Second, A.G. Edwards contends that as a matter of law the mutual funds in the Plan cannot be "parties in interest" within the meaning of ERISA § 406(a), 29 U.S.C. § 1106(a). Having reviewed the submissions of the parties, together with all exhibits thereto, and having conducted a hearing on the motion, the Court now is prepared to rule.

---

5. "Fund assets (including registered funds and unregistered funds advised by registered investment advisers) must be placed in the safekeeping of a qualified custodian, typically a bank or broker dealer. The fund contracts with a custodian to retain custody of all fund cash and securities, receive and deliver fund assets pursuant to instructions from the fund and its adviser, maintain the fund's general ledger, and generally compute the net asset value of shares and the total asset value of the fund." Kleiman & Teodoro, *Forming, Organizing and Operating a Mutual Fund*, 1497 PLI/Corp at 34. "The custodian's fee is usually calculated based upon net assets [of the fund]." 1 William Campbell Ries, *Regulation of Investment Management & Fiduciary Services* § 14:10 (2005).

## DISCUSSION

### A. Legal Standard

██ Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The pleadings for purposes of a Rule 12(c) motion include the complaint, the answer, and any written instruments attached to the pleadings as exhibits. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452–53 (7th Cir.1998). The main difference between a Rule 12(c) motion and a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure is that the latter may be filed before an answer to a complaint is filed, whereas a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *id.* at 452 n. 3 (quoting FED. R. CIV. P. 12(c)). Otherwise, however, a Rule 12(c) motion is evaluated "under the same standard as a motion to dismiss under [Rule 12(b)(6)]." *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995). Thus, a court, in ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir.2000). Likewise, the court must "view the facts in the complaint in the light most favorable to the nonmoving party." *GATX Leasing Corp.,* 64 F.3d at 1114. A court may "grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *Northern Ind. Gun & Outdoor Shows,* 163 F.3d at 452

(quoting *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993)).

### B. Motion for Judgment on the Pleadings

#### 1. Release of Claims

As discussed, this is an action for breach of fiduciary duty under ERISA. Pursuant to ERISA § 404, 29 U.S.C. § 1104, a fiduciary of an employee benefit plan must carry out its responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Under ERISA § 409, 29 U.S.C. § 1109, "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]" 29 U.S.C. § 1109(a). Finally, ERISA § 502, 29 U.S.C. § 1132, states, in pertinent part, "A civil action may be brought—(2) by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).

██ Actions for a fiduciary breach under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2), must "be brought in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (finding that an action was proper under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), where all of the plaintiffs shared "[a] common interest ... in the financial integrity of the plan"). *See also Steinman v. Hicks,* 352 F.3d 1101, 1102 (7th Cir.2003) (a claim of breach of fiducia-

ry duty for failure to diversify plan assets inured to the benefit of a plan as a whole because it targeted all plan participants); *Filipowicz v. American Stores Benefit Plans Comm.*, 56 F.3d 807, 812 (7th Cir. 1995) (quoting *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992 (7th Cir.1993)) ("Liability for a breach of fiduciary duty runs to the plan and not beneficiaries as individuals."). *Cf. Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194 (6th Cir.1992) ("[R]ecovery for a violation of fiduciary duty under 29 U.S.C. § 1109 inures to the benefit of the plan."). "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). *See also Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir.1991). In this case it is not disputed that A.G. Edwards is a fiduciary with respect to the Plan.

█ As discussed, in 2002 Boeckman left his employment with A.G. Edwards and, as a condition of receiving a severance package from the company, executed a release of claims against his former employer. Because the language of the release is important to a determination of whether the release bars Boeckman's claims in this case, the Court sets out the language of the release at some length:

> *Release.* You agree to accept the compensation, payments, benefits and other consideration provided for in paragraph 3 above in full resolution and satisfaction of, and hereby IRREVOCABLY AND UNCONDITIONALLY REMISE, RELEASE, WAIVE AND FOREVER DISCHARGE the Company and Releasees from, any and all manner of liabilities, actions, causes of action, contracts, agreements, promises, rights, claims and demands of any kind or nature whatsoever, in law or equity, whether known or unknown, which you have ever had, now have or in the future may have against the Company and Releasees including, but not limited to, claims arising out of or relating to your employment with the Company, the termination of your employment with the Company, compensation and/or benefits with the Company. You further understand and agree that this Agreement and Release shall act as a complete bar to any claim, demand or action of any kind whatsoever which could be or could have been brought by you and which seeks personal, equitable or monetary relief for you against the Company and Releasees . . . except for . . . claims with respect to any benefits in which you have a vested interest under the terms and conditions of any of the Company's employee benefit plans. You hereby waive and relinquish any and all rights you may have under any federal, state or local statutes, rules, regulations or principles of common law or equity which may in any way limit the effect of this release and other terms of this paragraph 6(a) with respect to claims which you did not know or suspect to exist in your favor at the time you executed this Agreement and Release, provided that it is understood and agreed that you are not waiving your ability to sue on any claim which may arise in the future from events or actions occurring after the date of this Agreement and Release.

Doc. 12, Ex. 1 ¶ 6(a).[6] Boeckman argues that the release does not bar his claims in

---

**6.** A.G. Edwards submitted the release to the Court not as an exhibit to its answer but as an

this case for four reasons: (1) the release is void under ERISA § 410, 29 U.S.C. § 1110; (2) Boeckman cannot waive claims for breach of fiduciary duty under ERISA that, as discussed, he brings derivatively on behalf of the Plan; (3) the release by its terms does not apply to a claim for "vested" benefits; and (4) the release by its terms does not apply to claims for breach of fiduciary duty arising after the effective date of the release. The Court will consider each of these contentions in turn.

■ Turning first to the matter of ERISA § 410, 29 U.S.C. § 1110, the statute provides in relevant part that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). "As the legislative history of this provision makes clear, ... exculpatory provisions which relieve a fiduciary from liability for breach of the fiduciary responsibility are to be void and of no effect." *Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir.1983). On the other hand, courts generally have not read ERISA § 410(a), 29 U.S.C. § 1110(a), as creating a blanket prohibition of the release of claims for breach of fiduciary duty. *See, e.g., Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir.1990) (a fiduciary and a plan beneficiary can settle a disputed claim that the fiduciary breached its fiduciary responsibilities under ERISA if the claim is knowingly and voluntarily released, notwithstanding ERISA § 410(a), 29 U.S.C. § 1110(a)); *Central States, S.E. & S.W. Areas Pension Fund v. Schill Trucking Serv., Inc.*, No. 91 C 6122, 1994 WL 87370, at *1 (N.D.Ill. Mar.17, 1994) (same). *But cf. Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 175–76 (7th Cir.1992) (stating that ERISA § 410(a), 29 U.S.C. § 1110(a), would nullify a plan provision indemnifying a pension fiduciary who has been found liable for breach of his fiduciary duties, but that the statute did not void a provision in a pension plan allowing indemnification of a fiduciary who was absolved of wrongdoing at trial).

■ The Court likewise finds unpersuasive Boeckman's contention that the release is unenforceable because, as a matter

---

attachment to its request for judgment on the pleadings. Nevertheless, the Court concludes that the release document is properly before the Court. Although in evaluating a motion for judgment on the pleadings under Rule 12(c) "[a] district court may not look beyond the pleadings," the court "may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir.1991) (a bankruptcy decision was properly treated as having been incorporated by reference into the pleadings in resolving a Rule 12(c) motion in a suit brought by the government against a borrower of a federal loan to recover the amount of the loan after the borrower obtained a discharge in bankruptcy, where the borrower referred to the bankruptcy proceedings in an affirmative defense, did not dispute the contents of the bankruptcy proceeding, requested the district court to take judicial notice of the bankruptcy proceeding, and requested a judgment on the pleadings on the basis of the bankruptcy proceeding). *See also Berry v. Illinois Dep't of Transp.*, 333 F.Supp.2d 751, 753–54 (C.D.Ill. 2004) (in a suit by a public employee against his employer for alleged deprivations of civil rights, the court could consider the employer's manual of personnel policies in evaluating a Rule 12(c) motion, because the manual was referenced in the complaint and was central to the employee's claims). In this instance A.G. Edwards asserted the release as an affirmative defense, the parties do not dispute the authenticity of the release or the fact that Boeckman executed it, and A.G. Edwards has requested judgment on the pleadings on the basis of the release. Therefore, the Court will consider the release document in evaluating A.G. Edwards's Rule 12(c) motion.

of law, Boeckman cannot release claims for breach of fiduciary duty under ERISA that are brought derivatively on behalf of the Plan. It is true that "[t]he validity of a waiver of pension benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." *Sharkey v. Ultramar Energy Ltd., Lasmo plc, Lasmo (AUL Ltd.)*, 70 F.3d 226, 231 (2d Cir.1995) (emphasis omitted). *See also Morais v. Central Beverage Corp. Union Employees' Supplemental Ret. Plan*, 167 F.3d 709, 712–13 (1st Cir.1999). However, "[i]t is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116–17 (7th Cir.1990) (a general release issued by an employee in favor of an employer in return for reinstatement, resumption of salary, and a lump-sum payment precluded an ERISA claim by the employee against the employer). This is consistent, of course, with the common law of trusts, wherein ERISA fiduciary duties originate. *See Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570 & n. 10, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (quoting S.Rep. No. 93–127, at 29 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4865) ("The fiduciary responsibility section [of ERISA], in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts."). "Where a cause of action has been established by a judgment or decree against the trustee for breach of trust, or against a third person for participating in a breach, or where the beneficiary believes that he has such a cause of action although no court has considered the matter, the beneficiary may release the trustee or the third party from liability and thereby extinguish such cause of action as may exist,

... if the conditions precedent to the validity of such a release exist[.]" George Gleason Bogert, George Taylor Bogert & Amy Morris Hess, *The Law of Trusts & Trustees* § 943 (2d ed. rev.1982) (collecting cases). *See also* Restatement (Second) of Trusts § 217(1) (1959) ("A beneficiary may preclude himself from holding the trustee liable for a breach of trust by a release or contract effective to discharge the trustee's liability to him for that breach.").

■ The Court concludes that Boeckman is on more solid ground with his contention that his claim is for vested benefits and thus excluded from the scope of the release by its terms. Although the United States Court of Appeals for the Seventh Circuit has not had occasion to speak to the precise issue presented by this case, a number of sister federal courts have addressed, in the context of standing, what constitutes a claim for vested benefits under ERISA. *See Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.1986) (explaining that a claim for vested benefits confers standing to sue under ERISA, while a claim for damages does not); *Yancy v. American Petrofina, Inc.*, 768 F.2d 707, 708–09 (5th Cir.1985) (same). In *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir. 1989), a class of plaintiffs filed a lawsuit under ERISA alleging breaches of fiduciary duties with respect to the sale of company stock held by a qualified employee benefits plan. *See id.* at 346–47. Specifically, the plaintiffs alleged that the defendants, as plan fiduciaries, sold the plan's shares of stock, in connection with the liquidation and distribution of plan assets, for a price below fair market value. *See id.* at 350. In other words, the amount of money received and distributed to plan participants, pursuant to the stock sale, did not reflect the full value of the benefits due under the terms of the plan. *See id.*

In evaluating whether the class asserted claims for vested benefits so as to have standing to sue under ERISA, the *Sommers* court examined prior federal decisions addressing the issue, including *Kuntz* and the court's prior decision in *Yancy*. *See* 883 F.2d. at 348–49. The court acknowledged that "[t]he distinction between 'benefits' and 'damages' is not clear. This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories. [ERISA] simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but were not." *Id.* at 349–50.

The *Sommers* court went on to say, "Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits." 883 F.2d at 350. The court concluded,

> The class's claim falls between these poles. However, we are persuaded that it is quite close to a simple claim that benefits were miscalculated. In *Yancy* it is conceded that the lump sum received was the full amount due under the terms of the plan in effect when the plaintiff retired. In *Kuntz* the plaintiffs also had received the full amount of their vested benefits under the plan (even if not as it had been represented to them). Here the class representatives claim that the amount received was not the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less

than fair market value. If the class prevailed on its claims, the representatives would be "eligible to receive a benefit"—the remainder of what was owed them and should have been paid to them at the time they received their lump sum settlement .... It is plain that here the class members seek their share of the difference between the price the representatives received for their shares and the fair market value of those shares at the time they were sold. In other words, the representatives have a claim for an ascertainable amount allegedly owed them at the time they received their lump sum .... We therefore conclude that the class's present claim is for ... vested benefits[.]

*Id.* (quoting 29 U.S.C. § 1002(7)). *See also Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1536 (10th Cir.1993) (quoting *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir.1990)) (stating that, in determining whether a claim is for vested benefits under ERISA, "[t]he crucial point is the receipt of the 'full extent' of [the plaintiff's] vested benefits"; thus, in a suit where a class of retirees "seek a damage award based upon their allegedly fraudulent discharge from their jobs ... they do not seek 'vested benefits improperly withheld.' ").

Like the *Sommers* court, this Court concludes that Boeckman's claim is closer to a simple claim that his benefits have been miscalculated than a claim for an unascertainable amount with no demonstration that the recovery will directly effect payment to him. As discussed, in *Sommers* the court reasoned that the plaintiffs were essentially stating a claim for the unpaid value of vested benefits (*i.e.,* the value not reflected in the stock's selling price), which were due upon distribution of plan assets. In this case, Boeckman contends that the value of the mutual fund shares in the Plan

does not reflect the market value of the shares:

The relative large size of the Plan's assets makes investment of these assets directly into registered mutual fund shares inappropriate. [A.G. Edwards] could directly retain the services of the portfolio manager thereby avoiding the incurrence of fees associated with investment in registered mutual fund shares. These associated fees include but are not limited to; shareholder service fees, transfer agent fees, 12b–1 fees (distribution fees), administrative fees, registration and reporting fees, reports to shareholders expenses, postage and stationary fees, audit and legal fees, custodian fees, and state and local taxes. For example, the shares of one of the funds available in the Plan, the Putnam Discovery Growth (ticker symbol PVIIX), have an expense ratio of 134 basis points (or 1.34%); however, the investment manager's portion of the fee is 43 basis points (0.43%). The other 91 basis point[s] (0.91%) goes toward these aforementioned fees and services that are superfluous and do not provide a benefit to the Plan commensurate with their cost.

\* \* \* \* \* \*

Because of the amount of the Plan's assets, Defendant, as the Plan Administrator, could have directly negotiated with the investment manager for the 43 basis point rate, avoided paying the additional fees inherent in a mutual fund investment, and saved the difference between those fee percentages for the benefit of the Plan.

Complaint ¶¶ 12–13.

Boeckman's complaint alleges also that "[w]ith the exception of four funds, all of the mutual funds available in the Plan offer investors the ability to purchase an 'institutional share." Complaint ¶ 14.

"The four retail mutual funds that do not offer a lower cost institutional fund class have a number of competitor funds that are similar in objective and quality and offer lower fee institutional fund classes to large investors such as the Plan." *Id.* "For example, the retail shares of one of the funds available in the Plan, the American Funds Growth Fund of America (ticker symbol AGTHX), have an expense ratio of 70 basis points (or .7%); however, the institutional share for the same fund, which bears the ticker symbol RGAFX, has an expense ratio of 41 basis points (or .41%)." *Id.* ¶ 15. Boeckman asserts, "Because of the amount of the Plan's investments in the mutual funds that offer institutional shares, Defendant, as the Plan Administrator, could have purchased, or caused to be purchased, the lower-expense, institutional shares on behalf of the Plan." *Id.* ¶ 16.

It is clear that the gravamen of Boeckman's claims is that he has not received the market value of the mutual funds shares in the Plan. Importantly, Boeckman does not allege, for example, that the funds in the Plan should have performed better. *See, e.g., Holtzscher v. Dynegy, Inc.,* No. Civ.A. H–05–3293, 2006 WL 626402, at \*4 (S.D.Tex. Mar.13, 2006) (claims that plan fiduciaries breached their fiduciary duty by investing in a poorly-performing stock were for damages, not vested benefits); *Hargrave v. TXU Corp.,* 392 F.Supp.2d 785, 789–90 (N.D.Tex.2005) (same). Rather, Boeckman alleges that because A.G. Edwards did not use its stature as a large investor to secure appropriate fees, he did not receive the full value of his benefits under the Plan. Thus, Boeckman asserts a claim for unpaid benefits in an ascertainable amount (the difference between the fees paid by the Plan had A.G. Edwards privately negotiated a contract with money managers used by the funds and the dif-

ference between the fees paid by the Plan had the Plan purchased institutional shares in the funds rather than retail shares) that will directly effect payment to him. This is a claim for vested benefits. *See In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 422–23 (N.D.Okla.2005) (holding that the claims of a putative class for breach of fiduciary duty under ERISA were for vested benefits where "plaintiffs seek benefits to which they were entitled at or before the time of their termination, but which they did not receive because of the defendants' wrongdoing."); *Gray v. Briggs*, No. 97 CIV. 6252(DLC), 1998 WL 386177, at *4 (S.D.N.Y. July 7, 1998) ("Where as here, the plaintiffs allege that the distributions they received were less than they were entitled to on account of the defendants' wrongful conduct during the term of the plaintiffs' employment, the plaintiffs' claim is for 'vested benefits.' "); *Kuper v. Quantum Chem. Corp.*, 829 F.Supp. 918, 923 (S.D.Ohio 1993) (holding in a class action under ERISA against fiduciaries of an employee stock ownership plan ("ESOP") that the class sought vested benefits, "given that the very basis of Plaintiffs' complaint is that the distribution of their ESOP shares did not represent ... everything due them under the plan ... when their participation terminated.") (emphasis omitted). *But cf. In re RCN Litigation*, No. 04–5068(SRC), 2006 WL 753149, at *14 (D.N.J. Mar.21, 2006).

Although, as discussed, the Seventh Circuit Court of Appeals has not had occasion to address the question of what constitutes "vested benefits" for purposes of ERISA under the specific circumstances presented by this case, the Court finds support for its view that Boeckman's claims have not been released in *Lynn v. CSX Transportation, Inc.*, 84 F.3d 970 (7th Cir.1996). In *Lynn* an employee who had signed a release of claims against his employer as a condition of entering an early retirement program

brought suit against the employer for additional pension benefits for military service that he claimed were owed him under the terms of his ERISA pension plan. The district court held that the claim was barred by the release. Reversing on appeal, the Seventh Circuit distinguished two prior decisions regarding releases of claims under ERISA, *Fair v. International Flavors & Fragrances, Inc.*, and *Licciardi v. Kropp Forge Division Employees' Retirement Plan*, 990 F.2d 979 (7th Cir.1993), on the grounds that in both *Fair* and *Licciardi* the plaintiffs were bringing suit to enforce the release terms. *See Lynn*, 84 F.3d at 974–75, 976. The *Lynn* court drew a "distinction" that it termed "a critical one" between "[p]ension entitlements" and "[c]ontested pension claims." *Id.* at 975. "A pension entitlement arises under the terms of the pension plan itself. A contested pension claim, by contrast, arises under a settlement agreement. A release may prevent a plan participant from asserting claims based on a settlement agreement, but may not bar claims based on pension entitlements." *Id.* The court noted that pension entitlements are not subject to release under ERISA § 206, 29 U.S.C. § 1056:

> Under the district court's interpretation of [*Fair* and *Licciardi*], the provisions of the release are in direct conflict with the anti-alienation provisions of ERISA. Title 29 U.S.C. § 1056(d)(1) states that "[e]ach pension plan shall provide that benefits provided under the plan may not be alienated or assigned," and the coordinating section of the Internal Revenue Code states that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13).

\*　　\*　　\*　　\*　　\*　　\*

Pension entitlements are, without exception, subject to the anti-alienation provision of ERISA .... Contested pension claims, on the other hand, are ... simply outside the realm of the provision.

84 F.3d at 975.[7]

The *Lynn* court held that the "central distinction" between the case before it, on the one hand, and *Fair* and *Licciardi,* on the other, was that the plaintiff in *Lynn* was seeking to enforce rights not under the release but under the terms of the plan. In other words, the plaintiff in *Lynn* was asserting a "pension entitlement":

Lynn is not asking the court here to interpret the language of the resignation agreement; everyone agrees on what it says. Under the terms of the resignation agreement, Lynn is entitled to "retirement payments in accordance with section 4.02(a) of the CSX Transportation, Inc. Pension Plan." Here is where the similarity between this case and *Fair* and *Licciardi* evaporates completely. Fair and Licciardi both argued that they were entitled to additional pension benefits *under the terms of their settlement agreements.* They were asking the court to interpret, not the language of their pension plans, but the language of the agreements they had entered into. Lynn, by contrast, is asking the court to interpret the pension plan itself. "The release did not affect [his] incontestable pension rights; it did affect, as in *Fair,* contestable claims *based on ambiguous terms* in the ... agreement." *Licciardi,* 990 F.2d at 982 (emphasis added). Lynn does not claim the agreement is ambiguous. He does not ask the court to interpret its terms. He seeks to pro-

tect military service benefits to which he believes he is entitled *under the terms of the plan.* We take no position on whether he is correct in this belief; that determination can only be made after consideration of his claim on the merits, and we leave it to the district court on remand. In short, it may well be that Lynn has no claim for his two years of military service, but it must be the plan which dictates that result, not the release.

84 F.3d at 976–77 (emphasis in original). *See also Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust,* 191 F.Supp.2d 223, 228 (D.Mass.2002).

In this case, the right asserted by Boeckman clearly is not in the nature of a "contested pension claim." As discussed, Boeckman alleges that he has not received all of the benefits due him under the Plan by reason of A.G. Edwards's failure to negotiate a contract directly with the money managers used by the mutual funds in the Plan and its failure to purchase institutional shares. Boeckman is asserting rights that arise under the Plan and ERISA, not the release. Therefore, his claim is for a "pension entitlement." *See Lynn,* 84 F.3d at 976–77. The substantive terms of ERISA, including, presumably, its provisions regarding the duties of plan fiduciaries, are a term of any plan subject to the statute. *See May Dep't Stores Co. v. Federal Ins. Co.,* 305 F.3d 597, 601 (7th Cir.2002) (citing *A.E.I. Music Network, Inc. v. Business Computers, Inc.,* 290 F.3d 952, 955–56 (7th Cir.2002)) (noting that the substantive provisions of ERISA are a term of any pension plan governed by the statute: "[L]ike many other contracts, pension plans governed by ERISA contain

---

**7.** Because one of the purposes of ERISA is to encourage employers to establish pension plans and, correspondingly, favorable tax treatment is furnished for pension plans that comply with ERISA, many sections of ERISA have counterparts in the Internal Revenue Code ("IRC"). *See Esden v. Bank of Boston,* 229 F.3d 154, 157 n. 2 (2d Cir.2000); *Plucinski v. I.A.M. Nat'l Pension Fund,* 875 F.2d 1052, 1058 (3d Cir.1989).

provisions implied by law."); *Donaldson v. Pharmacia Pension Plan,* 435 F.Supp.2d 853, 868–69 (S.D.Ill.2006) (because the substantive statutory law of ERISA is an implied term of any plan subject to the statute, such a plan constitutes a contractual undertaking to convey to participants all of the benefits to which they are entitled under the statute).

■ Finally, although it is not absolutely necessary for the Court to reach the question in light of the Court's conclusion that the benefits at issue in this case are "vested benefits" and thus outside the scope of the terms of the release, the Court agrees with Boeckman that claims of fiduciary duty arising after the effective date of the release are not within the scope of the release. The test of fiduciary prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), "focuses on the [fiduciary's] conduct in investigating, evaluating and making the [challenged] investment." *United States v. Mason Tenders Dist. Council of Greater N.Y.,* 909 F.Supp. 882, 886 (S.D.N.Y.1995). Moreover, an ERISA fiduciary has an ongoing duty to manage an investment with reasonable diligence because the "fiduciary duty under ERISA is continuous." *Id.* at 888. *See also Gruby v. Brady,* 838 F.Supp. 820, 831 (S.D.N.Y.1993) (plan trustees who paid benefits at a rate the plan could not afford breached their "continuing obligation to monitor the Fund's financial condition and ensure the benefits payments are not excessive."); *Whitfield v. Cohen,* 682 F.Supp. 188, 196 (S.D.N.Y.1988) (finding that an ERISA fiduciary "had a duty to monitor performance [of a plan investment] with reasonable diligence and to withdraw the investment if it became clear or should have become clear that the investment was no longer proper for the Plan."); *Marshall v. Craft,* 463 F.Supp. 493, 497 (N.D.Ga. 1978) (a successor trustee has a duty to liquidate prior improper investments upon assuming his responsibilities).

In light of the continuing duty of prudence imposed on plan fiduciaries by ERISA, each failure to exercise prudence constitutes a new breach of the duty, that is to say, a new claim. Thus, allegations that, following the execution of the release, A.G. Edwards continued to breach its fiduciary duty by continuing to pay excessive fees to mutual funds represent new, prospective claims not in existence when the release was executed. *See Miele v. Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund,* 72 F.Supp.2d 88, 102 n. 14 (E.D.N.Y.1999) (noting that under ERISA "causes of action for breach of fiduciary duty accrue each time a pension fund is injured as a result of unlawful investments or excessive benefit payments."); *NYSA–ILA Med. & Clinical Servs. Fund v. Catucci,* 60 F.Supp.2d 194, 199–200 (S.D.N.Y.1999) (each improper payment of ERISA plan assets to a third party was a distinct action that supported a new breach of fiduciary duty claim); *Carollo v. Cement & Concrete Workers Dist. Council Pension Plan,* 964 F.Supp. 677, 688 (E.D.N.Y.1997) (holding that claims for breach of fiduciary duty under ERISA accrue "each year the fiduciaries maintain the plan in violation of their duties under [29 U.S.C.] § 1104"); *Dole v. Formica,* No. C87–2955, 1991 WL 317040, at *8 (N.D.Ohio Sept.30, 1991) (finding recurring breaches, not just one initial breach with continuing effects, where a plan fiduciary had the plan pay excessive administrative fees and salaries, and had the plan collect sub-market rents, for several years, and holding that, each time a fiduciary made an improper payment with plan assets, "the [plan] [was] harmed and a new cause of action arose."); *Starr v. JCI Data Processing Inc.,* 767 F.Supp. 633, 638 (D.N.J.1991) (fiduciaries breach their duty to maintain an ERISA plan in the interest

of participants and beneficiaries each year the plan is maintained in violation of ERISA); *Buccino v. Continental Assurance Co.*, 578 F.Supp. 1518, 1521 (S.D.N.Y. 1983) (a fiduciary's continual failure to advise a plan "to divest itself of unlawful or imprudent investments" gives rise "to a new cause of action each time the [plan] was injured.").

The Court's view that the release does not bar claims arising after its effective date is supported by ERISA § 410, 29 U.S.C. § 1110, which courts have read as creating a bar to waivers of prospective claims for breach of fiduciary duty under ERISA. *See, e.g., Srein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1096 (2d Cir.1996) (noting that ERISA § 410(a), 29 U.S.C. § 1110(a), "has been applied to bar the waiver of a future liability."). One of the specific purposes of courts in applying ERISA § 410(a), 29 U.S.C. § 1110(a), to bar the release of future claims of breach of fiduciary duty has been to "prevent[ ] a contracting party from issuing to any fiduciary a license to violate [ERISA]." *Srein*, 93 F.3d at 1096. Although the Seventh Circuit Court of Appeals has not had occasion to address prospective waivers of statutory rights under ERISA, the court has recognized the mischief inherent in such waivers. In *Cange v. Stotler & Co.*, 826 F.2d 581 (7th Cir. 1987), the court observed that "[t]he waiver of substantive federal statutory rights after the violation has occurred is akin to a settlement of the dispute, but prospective waivers of statutory rights tend to encourage violations of the law by notifying the wrongdoer in advance that he or she can act with impunity; therefore prospective waivers uniquely can violate public policy." *Id.* at 594 n. 11. *See also Nicholson v. Conrail*, No. 86 C 5551, 1987 WL 5406, at *1 (N.D.Ill. Jan.14, 1987) ("[A] release covering all claims that might later arise between the parties ... would constitute a consent to the foregoing of legal protection for the future and would plainly be against public policy."). In view of the exacting nature of the fiduciary duties created by ERISA, the Court is particularly disinclined to recognize a prospective waiver of rights under the statute. As noted, ERISA fiduciary duties originate in the law of trusts, and in fact the duty of prudence set out in ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), "is a more stringent version of the prudent person standard than in the common law of trusts." *Reich v. Valley Nat'l Bank of Ariz.*, 837 F.Supp. 1259, 1273 (S.D.N.Y.1993). Moreover, the fiduciary duties created by ERISA are "the highest known to law." *Rogers v. Baxter Int'l, Inc.*, 417 F.Supp.2d 974, 982 (N.D.Ill.2006). It cannot possibly be consistent with the statutory purpose of ERISA to hold that an employer and plan fiduciary can immunize itself from all future claims for breach of fiduciary duty by the simple expedient of requiring a plan participant to sign a release as a prerequisite to receiving a severance benefit.

The Court holds that Boeckman's claims are not within the scope of the release. For this reason, the Court rejects A.G. Edwards's argument that Boeckman is required to tender back the severance package he received from A.G. Edwards as a precondition to bringing suit. The Court notes that it is an unsettled question whether the common-law requirement of tendering back consideration as a precondition to, for example, a suit for fraudulent inducement to contract applies in the ERISA context. *See, e.g., Deren v. Digital Equip. Corp.*, 61 F.3d 1, 2 (1st Cir. 1995) (whether ERISA displaces the tender-back requirement was a question of first impression the court left "for another day"). The matter can be resolved under elementary principles of contract law. Because the claims in this case are not within

the scope of the release, the severance benefit Boeckman received was not consideration for the release of those claims. Accordingly, this case presents no issue as to whether Boeckman must tender back the consideration he received for the release. *See Fleming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 261 (7th Cir. 1994) ("Unproblematic for excusing tender ... is the case in which all the plaintiff obtained in exchange for the release was something to which he was already entitled, as distinct from obtaining payment of a disputed or disputable claim. For in the former case the release would fail for want of consideration[.]"). *Cf. De Pace v. Matsushita Elec. Corp. of Am.*, 257 F.Supp.2d 543, 557 (E.D.N.Y.2003) (holding that tender back was not required in an ERISA suit where the consideration the plaintiffs received was benefits to which they were entitled, and the sums at issue in the suit were damages for fraudulent inducement to contract); *Rosenbaum v. Davis Iron Works, Inc.*, 669 F.Supp. 813, 818 (E.D.Mich.1987) (holding that a release of future claims in exchange for vested accrued benefits under ERISA was unsupported by consideration), *vacated in part on different grounds*, 871 F.2d 1088 (6th Cir.1989). The Court will deny A.G. Edwards's request for dismissal of Boeckman's claims on the pleadings on the basis of the release.

## 2. Prohibited Transactions

■ As discussed, A.G. Edwards urges dismissal of Count III and Count IV of Boeckman's complaint on the grounds that,

as a matter of law, it is not a party in interest for purposes of ERISA's statutory provisions governing prohibited transactions between a plan fiduciary and a party in interest. The Court concludes that Boeckman's allegations of prohibited transactions are sufficient to withstand dismissal at the pleading stage.

ERISA prohibits certain kinds of transactions between plan fiduciaries and parties in interest. Specifically, ERISA § 406(a), 29 U.S.C. § 1106(a), titled "Transactions between plan and party in interest," provides, in pertinent part,

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect -

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1). *See also* 26 U.S.C. § 4975(c)(1).[8] Under ERISA, "The term

8. Section 4975 of the IRC imposes an excise tax on prohibited transactions between an employee benefit plan and a disqualified person. *See* 26 U.S.C. § 4975(a). The statute explains that

the term "prohibited transaction" means any direct or indirect—

(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person;

'party in interest' means, as to an employee benefit plan ... (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan; [and] (B) a person providing services to such plan." 29 U.S.C. § 1002(14). "Section 406 supplements an ERISA fiduciary's general duties of loyalty and prudence to the plan's beneficiaries, as set forth in section 404, 29 U.S.C. § 1104, ... 'by categorically barring certain transactions deemed ... likely to injure the pension plan.'" *Keach v. U.S. Trust Co.,* 419 F.3d 626, 635 (7th Cir.2005) (quoting *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 242, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000)). "The *per se* rules of section 406 make much simpler the enforcement of ERISA's more general fiduciary obligations." *Leigh v. Engle,* 727 F.2d 113, 123 (7th Cir.1984). *See also Donovan v. Cunningham,* 716 F.2d 1455, 1464–65 (5th Cir.1983) ("The object of Section 406 was to make illegal per se the types of transactions that experience had shown to entail a high potential for abuse.").

Because, as has been discussed, mutual funds are subject to extensive regulation under the ICA and other federal statutes governing the securities industry, ERISA contains a specific exemption from the statutory definition of "parties in interest" for mutual funds:

> If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C.A. § 80a–1 et seq.], such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.

29 U.S.C. § 1002(21)(B). Although the language of the exemption is broad, it is not absolute. For example, it does not encompass "transactions in which plans invest in mutual funds in the first place." William A. Schmidt, *ERISA Development Relating to Mutual Fund Distributions,* SC49 ALI–ABA 57, 62 (Feb. 5, 1998). "This has been a concern to the mutual fund industry since ERISA was enacted, and has become an even more substantial concern in recent years." *Id.* Also, a transaction between a mutual fund and a third-party service provider to the fund may be deemed in some instances an indirect prohibited transaction where the third party is a "party in interest" of a plan. *See id.* (citing 29 C.F.R. § 2509.75–2).

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. § 4975(c)(1).

In sum, while the Court agrees with A.G. Edwards that Boeckman's allegations of prohibited transactions, as currently pleaded, are weak, the Court cannot conclude that "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir.1999) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989)) (setting out the standard under which a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure can be granted). *See also Evans v. Lederle Labs.*, 167 F.3d 1106, 1108 (7th Cir.1999); *Wagner v. Magellan Health Servs., Inc.*, 121 F.Supp.2d 673, 678 (N.D.Ill.2000). According to the leading treatise on federal civil procedure,

> [T]he complaint should not be dismissed merely because the plaintiff's allegations do not support the legal theory he or she intends to proceed on, since the district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible legal theory. Similarly, it need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court.

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 1998 & Supp.2006) (footnote omitted) (collecting cases). Although the Court will give close scrutiny to Boeckman's claims under ERISA § 406(a), 29 U.S.C. § 1106(a), at the summary judgment stage, the Court is not prepared to dismiss those claims at this juncture. Therefore, A.G. Edwards's request for dismissal of Count III and Count IV of Boeckman's complaint on the pleadings will be denied.

## CONCLUSION

The motion for judgment on the pleadings brought by Defendant A.G. Edwards, Inc. (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**