Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 23, 2004           Decided May 14, 2004

No. 03-7063

SILBURN B. FRANCIS,
APPELLANT

v.

RODMAN LOCAL UNION 201 PENSION FUND, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02390)

———

*St. John Barrett* argued the cause and filed the briefs for appellant.

*Ellen O. Boardman* argued the cause for appellees. With her on the brief were *James T. Kimble, Ronald C. Gladney*, and *Laurence E. Gold*.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and SENTELLE and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Silburn Francis filed suit against the Rodman Local Union 201 Pension Fund to recover benefits assertedly due him under the terms of an employee pension plan. The district court granted summary judgment for the Fund, concluding that Francis is not entitled to the benefits he seeks. We affirm.

I

The instant appeal arises out of litigation extensively chronicled in this court's opinions in *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 843 F.2d 1395 (D.C. Cir. 1988) (*Berger I*), and *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111 (D.C. Cir. 1999) (*Berger II*). The *Berger* litigation began in 1975, when a class of African–American rodmen—"construction workers who handle and position steel rods for reinforcing concrete and other building materials" — sued Iron Workers Reinforcing Rodmen, Local 201 and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL–CIO (collectively "the unions") for denying them the benefits of union membership on account of their race. *Berger I*, 843 F.2d at 1405–06. Although he was not a named plaintiff, Francis claimed to be a member of the *Berger* class. In *Berger I*, we upheld the district court's determination that the unions were liable for discrimination, and in *Berger II* we upheld a number of the court's determinations with respect to class membership and the remedies due class members.

One determination that we specifically did *not* uphold involved plaintiff Francis himself. The district court (in the form of a court order adopting the report of a Special Master) had found Francis to be a member of the plaintiff class, and it had awarded him $166,382 in back pay and $10,000 in compensatory damages. This court, however, concluded that "[t]here was conflicting testimony and other evidence as to whether Silburn Francis sought union membership during,

rather than after, the liability period," and that the Special Master had "weighed this evidence according to an incorrect . . . burden of proof." *Berger II*, 170 F.3d at 1126. Because we were "unable to determine whether the Master would have made the same findings if he had applied the correct burden of proof," we remanded for a redetermination of whether Francis was an appropriate member of the class. *Id.* In so doing, we emphasized that "Francis' award [was] subject . . . to the outcome of the remand of his class membership." *Id.* at 1135 n.13.

On remand from *Berger II*, a number of claimants settled their claims with the unions on an individual basis. Francis, represented by his own attorney, was one of those claimants. In return for "the sum of $150,000.00 in damages," Francis agreed to a "full, final and complete settlement" of all of his claims. Francis Settlement Agreement at 1 (Oct. 12, 1999) (J.A. at 66).

A year later, on October 9, 2000, Francis applied for pension benefits. The Pension Fund calculated his pension based on the reported hours he had worked in "Covered Employment." Cicero Decl. ¶ 5 (J.A. at 256). The Fund's calculation excluded hours that Francis did not work, but that he contends he would have worked but for the discrimination charged in the *Berger* litigation. Unhappy with the exclusion, Francis asked the Fund to readjust his pension to reflect those lost hours. The Fund denied that request.

On November 16, 2001, Francis filed the instant action to recover the disputed pension benefits from the Fund, and the unions intervened as defendants. After briefing and argument, the district court granted summary judgment for the defendants. This appeal followed.

## II

Francis filed this lawsuit, pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), "to recover benefits due to him under the terms of" an employee pension plan. 29 U.S.C. § 1132(a)(1)(B). The case turns in substantial part on the meaning of a specific provision of the Rodman Local Union 201 Pension Plan. Francis

argues that we should determine the meaning of the provision de novo, because it incorporates the terms of a regulation promulgated by the Department of Labor. The Fund, citing this circuit's decision in *Block v. Pitney Bowes Inc.*, contends that where, as here, a pension plan gives its trustees "discretionary authority to determine eligibility for benefits [and] to construe the terms of the plan," we must uphold the trustees' construction as long as it is reasonable. 952 F.2d 1450, 1452 (D.C. Cir. 1992) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). We need not resolve this disagreement, however, because it is plain that the Fund would be the victor under either standard of review.

Under the Plan, a participant's entitlement to a pension is based on his "hours of service." Pension Plan §§ 5.3, 5.6 (J.A. at 261–62). The Plan defines "hours of service" as:

> [E]ach hour for which an Employee is paid or entitled to be paid for work in Covered Employment. The term "Hour of Service" also includes *each hour for which back pay*, regardless of mitigated damages, *is awarded or agreed to by an Employer* to the extent such award or agreement is intended to compensate an Employee for periods during which he would have been engaged in Covered Employment. . . . Hours of Service shall be computed and credited in accordance with Department of Labor Regulations § 2530.200b.

Pension Plan § 1.16 (J.A. at 260) (emphasis added). The referenced Department of Labor regulation uses virtually identical language to define an "hour of service":

> (1) An hour of service is each hour for which an employee is paid, or entitled to payment, for the performance of duties for the employer during the applicable computation period. . . .
>
> (3) An hour of service is each hour for which back pay, irrespective of mitigation of damages, *is either awarded or agreed to by the employer.*

29 C.F.R. § 2530.200b–2 (emphasis added).

Under the terms of the Plan, there is no dispute that Francis is entitled to pension benefits for the hours that he

actually worked. At issue are his benefits for the hours that he contends he would have worked but for discrimination by the unions. Although the Plan permits hours of service to be computed "to compensate an Employee for periods during which he would have been engaged in Covered Employment," Pension Plan § 1.16 (J.A. at 260), both the Plan and the regulation define an "hour of service" as an hour for which back pay is either "awarded or agreed to by the employer." As the unions do not dispute that they are "employers" within the meaning of the Plan, Appellee's Br. at 23, both sides agree that the crux of the matter is whether hours for back pay were "awarded" or "agreed to" by the unions.

It is clear at the outset that Francis was not "awarded" hours for back pay by this or any court. If anything, our remand in *Berger II* cast doubt on Francis' status as a class member and hence on his eligibility for such an award. Thereafter, by entering into a "full, final and complete" settlement without waiting for an adjudication of his status, Francis permanently eliminated the possibility of such an award.

Because Francis did not receive an "award," he must hang his pension claim on the contention that, in the settlement agreement, the unions "agreed to" give him back pay for hours of service. But the settlement contained no such agreement. The operative language states:

> [I]n consideration of Francis' full discharge of past, present and future claims . . . arising out of or related to this lawsuit against defendants, and the underlying claims upon which this lawsuit is based, including but not limited to claims for back pay, compensatory damages, punitive damages and individual counsel's attorneys' fees and costs . . . *defendants agree to pay to Francis the sum of $150,000.00 in damages.* This settlement shall apply to all claims Francis has against defendants in this case to the effect that this agreement shall be a full, final and complete settlement between the parties to this agreement.

Francis Settlement Agreement at 1 (J.A. at 66) (emphasis added). Although the settlement did discharge Francis' claims for back pay, the unions did not agree that Francis was actually entitled to such back pay. Rather, they agreed to the sum of $150,000 "in damages." Nothing in the agreement allocates that lump sum to hours of service, and nothing indicates that there was even one "hour for which back pay . . . [was] . . . agreed to by [the] employer." Pension Plan § 1.16. The failure of the parties to mention Francis' pension rights, to label the $150,000 payment back pay, or to provide any process for determining how much of the $150,000 was attributable to hours of service, is "evidence that they did not intend the . . . payment to generate pension benefits." *Licciardi v. Kropp Forge Div. Employees' Ret. Plan*, 990 F.2d 979, 983 (7th Cir. 1993); *see Anderson v. Western Conference of Teamsters Pension Trust Fund*, 1993 WL 413138, at *3–6 (E.D. Cal. 1993) (finding that settlement distribution was not intended as an "agreement to hours of back pay").

Francis could have attempted to reserve his right to additional pension benefits by including an agreement for hours of service for back pay in the settlement that he reached with the unions. Another claimant who settled individually, Leonard Robinson, did just that. His settlement agreement included language similar to that in Francis', but it also provided:

> Robinson may participate in settlement negotiations with defendants and the remaining claimants concerning pension adjustments and receive any such adjustments that may be agreed to as to Robinson either individually or as a remaining claimant in such negotiations.

Robinson Settlement Agreement at 1 (Nov. 5, 1999) (J.A. at 229). Likewise, the settlement that the unions entered into with the remaining class members, two months after Francis settled individually, contained the following express language:

> [E]ach claimant . . . may submit a claim to the . . . Pension Fund . . . to determine whether he is entitled to a pension benefit or an adjustment of a pension benefit as a result of the hours of work determined by the

> Special Master … and *in accordance with the hours of work attributed to the claimant by agreement of plaintiffs and defendants.*

Class Settlement Agreement at 3 (Dec. 8, 1999) (J.A. at 76) (emphasis added). The class settlement also contained a process for determining "the hours of work to be attributed to each" of a list of specifically identified class member claimants. *Id.* at 3–5, app. A (J.A. at 76–78, 83–84). But Francis cannot take advantage of that provision because it was part of an agreement, entered into two months after his own, that does not include him in its list of beneficiaries. To the contrary, because Francis intentionally opted to settle individually rather than as part of the class, he cannot obtain the benefit of the bargain that the class struck for its members alone.

We, of course, do not know why Francis opted to settle for a lump sum — in advance of a judicial decision regarding his class membership and separately from the other plaintiffs. Perhaps he did not want to risk the possibility that the Special Master, applying the burden of proof required in *Berger II*, might determine that he was not a member of the class and thus not entitled to receive anything. Whatever the reason, Francis did settle on his own, receiving $150,000 in exchange for dropping all of his claims. Although Francis retains the right to receive pension benefits for the hours that he actually worked, the Fund's trustees cannot be faulted for refusing to grant him still further benefits. Their fiduciary responsibility is to those rodmen who are entitled to benefits by virtue of work, award, or agreement, and the trustees have an obligation to husband the Fund's resources to ensure that it has sufficient assets to pay those benefits.

## III

Because Silburn Francis has no hours of service for which back pay was awarded or agreed to by the unions, he is not entitled to pension benefits beyond those attributable to the

hours that he actually worked.   Accordingly, the judgment of the district court is

*Affirmed.*