NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2921
_____

NORMAN HANSEN,
                                        Appellant
v.

INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES INDUSTRY
PENSION PLAN; BOARD OF TRUSTEES INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-05028)
District Judge: Honorable Robert F. Kelly
_____

Argued June 11, 2019
Before: HARDIMAN, KRAUSE, and PORTER, *Circuit Judges*.

(Filed:  July 24, 2019)
_____

Kenneth D. Berman [Argued]
1626 Pine Street
Philadelphia, PA 19103
        *Attorney for Appellant*

Kent Cprek
Judith A. Sznyter [Argued]
Jennings Sigmond
1835 Market Street
Suite 2800
Philadelphia, PA 19103
        *Attorneys for Appellees*

---

OPINION*

---

HARDIMAN, *Circuit Judge*.

Norman Hansen appeals a summary judgment in favor of the International Union of Painters & Allied Trades (IUPAT) Industry Pension Plan and the Plan's Board of Trustees (the Board). We will affirm.

I[1]

Hansen was a member of the IUPAT and a vested participant in the Plan, which is a multiemployer, defined-benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* The Plan

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a summary judgment, applying the same standard as the District Court. *E.g., Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007).

Hansen concedes "the Plan grants discretion and authority to the plan administrator to determine eligibility and interpret the Plan terms." Hansen Br. 18; *see* App. 145–46 (§ 2.03), 206 (§ 9.04). So we apply the arbitrary and capricious standard of review in evaluating the Board's interpretation of the Plan. *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). We will review the collective bargaining agreement (CBA) provisions de novo without resolving which standard of review applies to the Board's interpretation of non-Plan documents. *See Francis v. Rodman Local Union 201 Pension Fund*, 367 F.3d 937, 939 (D.C. Cir. 2004) (declining to resolve the dispute over the standard of review of the pension plan's interpretation because it was "plain that the Fund would be the victor under either standard of review"). We interpret both the Plan and CBA under ordinary contract principles. *See M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015).

provides retirement benefits for employees under collective bargaining agreements between the IUPAT and employers. The Board is the named fiduciary under ERISA and administers the Plan.

In January 2012, Hansen was injured at work. He later settled his wage, medical, and loss benefits related to the injury under a "Workers' Compensation Compromise and Release Agreement" with his employer. He was deemed disabled by the Social Security Administration as of September 2013. In February 2015, Hansen applied for disability benefits from the Plan. After evaluating his claim based on his disability onset date from the SSA, the Plan denied his application "because he did not meet the requirement of [§ 6.12(a)(4)], which provides that a claimant must have 'at least 1,000 Hours of Service in Covered Employment [benefit hours] in the two Calendar Years prior to the year in which he or she became disabled.'" *Hansen v. Int'l Painters & Allied Trades Indus. Pension Plan*, 2017 WL 4539217, at *2 (E.D. Pa. Oct. 11, 2017) (quoting App. 173). Hansen appealed the decision.

The Board denied the appeal, concluding Hansen accumulated 894 benefit hours during the relevant period, short of the necessary 1,000 hours. The Board based its decision on the definition of "Covered Employment": "work or leave time that is . . . Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan[.]" App. 233–34. It determined Hansen could not receive benefit-hours equivalency for workers' compensation, unemployment compensation, and

3

vacation pay because "[t]here [was] no indication that [Hansen's] employer was obligated to make contributions to the Plan for [those] payment[s]." App. 134.

Hansen then sued the Plan and Board in the District Court, alleging four claims under ERISA: (1) claimed benefits under 29 U.S.C. § 1132(a)(1)(B); (2) failure to provide plan documents in violation of § 1132(c)(1); (3) breach of fiduciary duty under § 1132(a)(2); and (4) equitable relief under § 1132(a)(3). After the parties filed cross-motions for summary judgment, the District Court dismissed Hansen's claims except for his benefits claim. The District Court remanded the claim to the Board to consider whether the collective bargaining agreement (CBA)[2] between the IUPAT and Hansen's employers required them to contribute to the Plan for workers' compensation, unemployment compensation, and vacation pay under the "Covered Employment" provision.

The Board evaluated the effect of the CBA, determining that the payments at issue did not qualify as "Covered Employment," so Hansen did not meet the 1,000-hour requirement for benefits. Hansen then filed a motion for relief from the Board's decision and to reopen the case under Rule 60(b) with the District Court, which it granted. The parties filed cross-motions for summary judgment, and the Court granted the Plan and Board's motion. The Court held the Board did not act arbitrarily or capriciously in denying Hansen benefits because "there is no requirement in the CBA[] that Hansen's

_____

[2] Hansen's employers signed the same CBA with the IUPAT (the District Council No. 21 Collective Bargaining Agreement).

4

employers . . . make contributions to the Pension Plan for workers' compensation and unemployment benefits payments." *Hansen v. Int'l Painters & Allied Trades Indus. Pension Plan*, 2018 WL 3642297, at \*5 (E.D. Pa. Aug. 1, 2018). And the Court agreed with the Board's determination that Hansen cannot receive double-credit for hours worked and the resulting vacation pay under the CBA. Hansen timely appealed.

II

Hansen claims he is entitled to equivalent benefit hours for workers' compensation and unemployment compensation payments. To receive a disability pension under the Plan, Hansen must show he had at least 1,000 "Hours of Service in Covered Employment" in the two years before he became disabled. App. 173. Like the District Court, we will focus on "Covered Employment" and assume without deciding that the equivalent hours for workers' compensation and unemployment compensation qualify as "Hours of Service."

The District Court instructed the Board to consider on remand whether the CBA requires Hansen's employers to make contributions to the Plan for workers' compensation and unemployment compensation, which would qualify these payments as "Covered Employment." Hansen argues § 13.14.3 of the CBA mandates these payments count towards his benefit hours. Under that provision, "each hour worked for, including hours attributable to show up time, and other hours for which pay is received by the Employee in accordance with the Agreement, shall be counted as hours for which contributions are payable." App. 428. On Hansen's view, the final clause of § 13.14.3

5

"instructs the [Board] to treat hours for 'other pay' employees receive in connection with the . . . CBA 'as hours for which contributions are payable.'" Hansen Br. 25. So he contends the provision "presupposes another category of pay which employers do not contribute to the [Plan], which is exactly the case with workers' and unemployment compensation benefits that Hansen's employers had to provide under the . . . CBA that are paid under state law by third party insurers or agencies." *Id.*

Hansen's argument is flawed, as the Board noted. Although "Agreement" in § 13.14.3 does refer to the CBA, workers' compensation and unemployment compensation are not paid "*in accordance with* the [CBA]."[3] *See* App. 428 (emphasis added). Rather, the CBA merely recognizes the employer's *statutory* obligation to maintain workers' compensation and unemployment compensation coverage. Section 12.1 of the CBA provides: "Upon signing an Employer to this Collective Bargaining Agreement, the Employer must submit to the Union . . . proof of having proper Worker's Compensation and Unemployment Insurance." App. 419. Likewise, Section 18.1 of the

---

[3] The Board also argues § 13.14.3 does not apply to the Plan because that portion of the CBA "deals with contributions to the [IUPAT Labor-Management Cooperation Initiative]" and not contributions to the Plan. Board Br. 24. This is because the heading for § 13.14 (under which § 13.14.3 falls) only lists "The International Union of Painters and Allied Trades Labor-Management Cooperation Initiative," a distinct entity from the Plan. App. 428. But the language "[f]or the purpose of this Article" in § 13.14.3, App. 428, shows the subsection applies to Article 13 as a whole, which includes subsections about contributions to the Plan. Because we interpret the CBA under ordinary contract principles, we decline to adopt the Board's interpretation, which strays from the clear meaning of "Article" in the CBA. *See M&G Polymers USA, LLC*, 135 S. Ct. at 933 ("Where the words of a contract . . . are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." (quoting 11 Richard Lord, Williston on Contracts § 30:6 (4th ed. 2012))).

CBA explains that the "Employer shall be responsible for providing Workers' Compensation Insurance to his Employees pursuant to the provisions of the Workers' Compensation Act of Pennsylvania and in any other state in which the Employee may be working." App. 436. These provisions—which are the only ones that address workers' compensation and unemployment compensation—show these payments are not "hours for which pay is received by the Employee in accordance with the [CBA]." App. 428. Rather, they demonstrate that employers must maintain insurance policies by which employees receive payments from the insurer or state—not the Plan.

Hansen also argues that employers need not contribute to the Plan for these payments to count as benefit hours. We disagree because the CBA cannot expand the plain language of the "Covered Employment" definition in the Plan. *See* **Board Br. 24.** This provision explains that eligible Hours of Service are those "for which *an Employer is obligated* to make contributions to the Plan or the Trust for credit to the Plan." App. 234 (emphasis added).

For these reasons, we agree with the District Court's conclusion "that there is no requirement in the CBA[] that Hansen's employers . . . make contributions to the Pension Plan for workers' compensation and unemployment benefits payments," and that Hansen "fail[ed] to point to any section of the CBA[] that require[s] contributions for such hours." *Hansen*, 2018 WL 3642297, at *5. Our de novo review of the Board's interpretation of the CBA confirms that because these payments do not qualify as

7

"Covered Employment," the Board correctly declined to count them as equivalent benefit hours.

III

We next consider Hansen's argument that he should have received benefit hours towards the 1,000-hour requirement for the $822 in vacation pay he received from his employers under the CBA. It's clear the CBA requires Hansen's employers to contribute to the Plan's Vacation Fund for each hour worked. Section 13.4 of the CBA provides: "The Employer agrees to contribute for each Employee covered by this Agreement to the Vacation Fund in the manner provided herein . . . ." App. 422. And § 23.16.1 of the CBA provides that employers will contribute one dollar to the Vacation Fund for every hour an employee works. While Hansen and the Board agree the CBA requires employers to contribute to the Vacation Fund this way, they diverge on whether the $822 Hansen accrued in the Vacation Fund translates into 822 benefit hours.

Hansen argues reading § 23.16.1 with § 13.14.1 requires that his vacation pay count as benefit hours. He claims each dollar employers contribute to the Vacation Fund represents one hour of work and should be treated as such under the Plan's benefit calculations.

Hansen's argument fails because his interpretation counts every hour worked twice under "Hour of Service."[4] He seeks credit for each hour worked (which triggered

---

[4] "Hour of Service" as defined in Article 13 of the Plan includes

8

his employer to make a one-dollar contribution to the Vacation Fund), and then again for the one-dollar contribution as a vacation "hour." This is precluded by subsection (j) of the "Hour of Service" definition, which provides that "[h]ours are credited to the Employee for the computation period in which service is performed, for which payment is made or to which the award or agreement pertains and *will not be duplicated under different subsections*." App. 236 (emphasis added). While each hour Hansen worked to receive the vacation pay counts as an "Hour of Service," the one-dollar contribution to the Vacation Fund does not. The Department of Labor regulation defining "hours of service" for ERISA pension plans confirms this as well. In explaining the "[r]ule against double credit," the regulation provides that "an employee is not required to be credited on account of a period during which no duties are performed with a number of hours of service which is greater than the number of hours regularly scheduled for the performance of duties during such period." 29 C.F.R. § 2530.200b-2(b)(3)(i); *accord Mora v. Constr. Laborers Pension Tr. for S. Cal.*, 435 F.3d 1121, 1124 (9th Cir. 2006).

---

(a) Each hour for which an Employee is paid or entitled to payment for the performance or nonperformance of duties with an employer.

. . .

(c) Each hour for which an Employee is paid, or entitled to payment, by an employer . . . due to vacation . . . .

App. 235–36.

9

So the Board did not act arbitrarily or capriciously when it found that Hansen's vacation pay does not count as benefit hours under the Plan.

\* \* \*

For the reasons stated, we will affirm the District Court's summary judgment in favor of the Plan and Board.